STANLEY v. WACASTER, ADMINISTRATOR.

4-7292                                        178 S. W. 2d 50

Opinion delivered February 28, 1944.

Leo. P. McLaughlin and Jay M. Rowland, for appellant.

Murphy & Wood, for appellee.

SMITH, J. Appellant alleged in her complaint filed herein that upon the death of her mother, when she was an infant only three months old, her father, Chandler Keith, entered into a contract with Tom Wacaster, the husband of her mother's sister, for the adoption of appellant by Wacaster and his wife. Wacaster and his wife are both dead, and died without issue born to them. Mr. Wacaster survived his wife, and upon his death this suit was brought to enforce the contract of adoption. The court denied the relief prayed, upon the ground that the testimony tending to establish the contract did not

measure up to the requirements of the law to obtain that relief, and from that decree is this appeal.

A leading case on the subject is our own case of *O'Connor* v. *Patton,* 171 Ark. 626, 286 S. W. 822, which defines the conditions under which such a contract may be enforced. The opinion by the late Justice WOOD leaves but little which might be added. It was there said that such a contract would be enforced but only when the evidence tending to establish its existence was clear, cogent and convincing, but that even when established it would not deprive the foster parent of the right to make a testamentary disposition of his estate which left nothing to the foster child. In other words, the rights of such a foster child are no greater than are those of a natural child. The later case of *Cooper* v. *Bradford,* 196 Ark. 327, 117 S. W. 2d 719, reviews the O'Connor case, *supra,* and other cases, and reaffirms their holding.

Here, Wacaster died intestate, and the question for decision is that of the sufficiency of the testimony to establish the contract sought to be enforced.

Appellant testified that she was born June 5, 1899, and that her mother died three months later, and that her father gave her to the Wacasters to have and keep as their own child, and that she was reared as a daughter, and always regarded the Wacasters as her father and mother, and that she had no other home until she was married and established a home of her own, and that she was always referred to by them as their child, and they called her such, and she called Mrs. Wacaster ''Mama'' and called Mr. Wacaster ''Tommy,'' an affectionate substitute for father.

Olen Keith, a brother of appellant's father, testified that when the baby was delivered to the custody and possession of the Wacasters, they asked its father if the baby would thereafter be their baby, and not his, and they were assured by the father of the child that the baby should thereafter be the Wacaster's baby, because he, the father, was not able to take care of it. Another uncle of appellant gave testimony to substantially the

same effect, but neither testified that Wacaster agreed to adopt the child.

There was testimony on the part of neighbors and acquaintances to the effect that appellant was treated as, and was thought to be, the child of the Wacasters. Another neighbor and close friend of Mrs. Wacaster, who apparently is one of the few disinterested witnesses in the case, testified that Mrs. Wacaster told her they had never adopted appellant, and had never thought of doing so.

It does not appear that the Wacasters were searching for a baby to adopt. Upon the death of Mrs. Keith, the sister of Mrs. Wacaster, Keith was left with three babies, a boy and two girls, all under five years of age. Appellant was one of these. The father took the elder girl to his father and mother, but the record does not show what became of the boy, except that it inferentially appears he was not kept by his father.

Wacaster was a mail carrier, and was a frugal man, and out of his salary had saved an estate worth about $6,000 at the time of his death. He was devoted to both appellant and his own family, and he made contributions for various purposes to appellant amounting to $2,500, and even more to his own family. There was testimony to the effect given by an interested witness that appellant's father, who was addicted to drink, sought a loan from Wacaster, and threatened, when it was refused, to retake possession of appellant, and Wacaster said if Keith, the father, wanted his child, he would have to come and get her, as he was unwilling to drive his horse, which he used as a mail carrier, to Montgomery county, where Keith, the father lived.

Appellant was called both Grace Keith and Grace Wacaster by her associates, but she was registered in school as Grace Keith, and gave that as her name when her marriage license was issued, and she announced her intention to marry without asking Mrs. Wacaster's consent.

Appellant quit school over the protest of Wacaster, but at his request started a course in a business college,

which she did not complete. She began working at fifteen years of age, and devoted all her earnings to her own purposes. Certain it is that appellant was never adopted in the manner provided by the statutes, but no reason is shown why she might not have been if Wacaster had any such intention or had made any such agreement.

We conclude that the court was fully warranted in dismissing appellant's complaint as being without equity, for the reason the testimony fails to show any agreement on the part of Wacaster to adopt her.