RUTH WILLIAMS ET AL v. KATHLEEN NASH, ADM'X

5-4921                                    445 S. W. 2d 69

Opinion delivered September 15, 1969

[Rehearing denied October 27, 1969]

*John F. Gibson,* for appellants.

*Crumpler, O'Connor, Wynne & Mays* and *Mahony & Yocum,* for appellee.

FRANK HOLT, Justice. This is an appeal from a probate court order in which it was determined that all of the property of Brady Franklin Nash, deceased, should be vested in his two adopted minor children, subject to the dower and statutory rights of his widow. The appellee, who is the surviving spouse and also the natural mother of the children adopted by the deceased, was appointed administratrix of his estate. The appellants are the collateral heirs of the deceased.

For reversal the appellants urge that a temporary order of adoption does not create the right of inheritance in the children sought to be adopted. Since we do not agree with this contention, it becomes unnecessary for us to consider the additional point urged by appellants that the final decree of adoption rendered in the case is void on its face and does not create the right of inheritance.

On December 13, 1966 Brady Franklin Nash filed his petition of adoption in the probate court. In his petition he stated, *inter alia,* that he was morally fit and financially able to care for and support his minor stepchildren whom he wanted to adopt; that the minor chil-

dren were residing with him and his wife, who is their natural mother; that she had consented to the adoption; and he desired that they have his name and that substituted birth certificates be issued to that effect. On the same day the court rendered a temporary order of adoption. This order provided that: "[F]rom this date the said Gatha Ruth Hood and Wanda Darlene Hood shall be to all legal intents and purposes the children of the petitioner; that their names be changed to Gatha Ruth Nash and Wanda Darlene Nash, respectively, and that substituted birth certificates be amended to show the name of the adopting parent." On March 3, 1967, or less than six months after the rendition of this temporary order of adoption, the petitioner died. On June 14, 1967, upon the petition of appellee as administratrix of his estate, the temporary order was made final, the court finding that more than six months had elapsed since entry of the temporary decree and that no objections had been filed thereto by any person or agency.

Subsequent to this final decree the appellants, as collateral heirs, filed a petition to determine heirship of decedent's property. The decedent left a will which predated his marriage to appellee. The appellee, individually and as guardian of the two minor children, filed an intervention alleging that the children were entitled to inherit the decedent's estate, subject to her dower and statutory rights. The appellants responded and alleged that these children were not legally adopted by the decedent and that the purported adoption should be annulled. The court found the two minor children were entitled to inherit from their adoptive parent, the decedent, and that appellants' petition for determination of heirship was a collateral attack on the order of adoption which is not subject to collateral attack. The court said:

"* * * I do not believe that it was the intention of our legislature to change the legal status of these children merely by reason of the death of the petitioner prior to the expiration of six months from

the date the original Decree was entered. As children of the petitioner from the date of the entry of the original Decree, said children were entitled to inherit as children of the petitioner."

The court then ordered that decedent's property be vested in his two adopted children, subject to the dower and statutory rights of his widow. We agree with the trial court. Ark. Stat. Ann. § 56-108 (1947) provides that when a temporary decree is rendered in an adoption case, the court shall order "that from the date of the decree the child shall to all legal intents and purposes be the child of the petitioner. The court may decree that the name of the child be changed according to the prayer of the petition, and shall provide whether the child's substituted birth certificate shall show the name of its natural parents or its adopting parents. After six [6] months from the entry of said temporary decree the petitioner may apply for a final decree and if no objections be made thereto by any person or agency, the same shall be granted. Upon objections being made, however, the court shall hear the same and shall thereupon make such orders as may be necessary. [Acts 1947, No. 369, § 9, p. 820.]"

The appellants argue that the temporary decree did not create the right of inheritance. They insist that according to § 56-109, a later provision of the above quoted act, the right of an adopted child shall vest only upon a final decree. This section of the statute reads, in part, that upon entry of a final decree:

"The person adopted shall have every legal right, privilege and obligation and relation in respect to education, maintenance and the rights of inheritance to real estate or the distribution of personal estate on the death of the adopting parents as if born to them in legal wedlock."

We have had occasion to consider the effect of a temporary decree of adoption. *A.* v. *B.,* 217 Ark. 844,

233 S. W. 2d 629 (1950). This case involved the question whether the mother of an illegitimate child could revoke her consent to its adoption after a temporary order of adoption was granted and before a final order of adoption was made. The mother and the father of the illegitimate child married following her consent to the adoption and she sought to withdraw her consent before the final decree. It was argued that the subsequent marriage and a withdrawal of consent before the final order prevented a valid adoption. The court said:

> "* * * The answer to this is that the adoption is effective as of the date of the interlocutory order, unless later set aside at the final hearing for good reason (§ 56-108), and the consent is required as of the date of the interlocutory order. At the relevant date in this case the child was illegitimate; and the adoption had already become effective, subject to the final hearing, when his natural parents married each other."

Despite the fact that objection was voiced and an attempt made to withdraw consent before final rendition of the order, we held that the adoption was valid and effective upon the date of the interlocutory order.

We have also held that an adopted child who is later adopted by other parents has inheritance rights from both adoptive parents. *Hawkins* v. *Hawkins*, 218 Ark. 423, 236 S. W. 2d 733 (1951). See, also, *Graham* v. *Hill*, 226 Ark. 258, 289 S. W. 2d 186 (1956).

Our statute provides that a petitioner "may apply for a final decree" after six months and the court shall grant a final decree if no objections are made by any person or agency. This time limitation permits anyone or any agency to voice disapproval. Even if objections are made, it provides that "the court shall hear the same and shall thereupon make such orders as may be necessary." In the case at bar no objections were made by

any person or agency before the final decree was rendered. Although the final decree was granted at the request of the administratrix of the petitioner, the granting of the decree was a mere formality in the absence of any objections. In our view the stepchildren, whom petitioner desired to adopt, became his children "from the date of the [temporary] decree * * * for all legal intents and purposes." The language in § 56-109, relied upon by appellants, is merely descriptive of these vested legal rights. It necessarily follows that decedent's property is vested in his adopted children, subject to his widow's dower and statutory rights. If the decedent had desired a limitation of these vested rights, he could have made appropriate provisions in a will as was done in *Hawkins* v. *Hawkins, supra.*

Affirmed.

FOGLEMAN and BYRD, JJ., dissent.

JOHN A. FOGLEMAN, Justice, dissenting. In view of the fact that the majority is departing from a well-established rule of construction in adoption cases, I must respectfully dissent. In *Minetree* v. *Minetree,* 181 Ark. 111, 26 S. W. 2d 101, this court stated that the proceeding to adopt a child as an heir was unknown to the common law and exists in this state only as a special statutory proceeding, relying upon the authority of *Morris* v. *Dooley,* 59 Ark. 483, 28 S. W. 30. In determining the validity of an adoption proceeding there involved, we said:

"* * * As said in *O'Connor* v. *Patton, supra,* 'The right of inheritance as such is conferred in our state upon a stranger in blood only by pursuing the special statutory proceeding for adoption'; and we think the statute should be strictly construed as against the adopted child, 'because it is in derogation of the general law of inheritance, which is founded on natural relationship, and is a rule of

succession according to nature which has prevailed from time immemorial.' ' '

Although that holding was sharply criticized in a dissenting opinion and the doctrine had previously been criticized in *Morris* v. *Dooley, supra,* this court followed and declined to overrule the decision in *Minetree* in *Pardo* v. *Creamer,* 228 Ark. 746, 310 S. W. 2d 218.

There are significant portions of the adoption statute which preclude the result reached by the majority if the rule as to strict construction of the statute is followed. The statute provides that from the date of the temporary decree the child shall to all legal intents and purposes be the child of the petitioner. Ark. Stat. Ann. § 56-108 (1947). Nothing whatever is there said relative to rights of inheritance. The statute then provides that upon the entry of the final decree of adoption, the person adopted shall have every legal right, privilege and obligation and relation in respect to education, maintenance and *the rights of inheritance to real estate or the distribution of personal estate on the death of the adopting parents* as if born to them in legal wedlock. Ark. Stat. Ann. § 56-109 (1947). The difference in the language of the two sections is striking. We must, and should, upon a strict construction of the act against the "adopted" child, presume that the legislature had some intention and purpose in stating the rights of inheritance growing out of the entry of the final decree but not stating any right of inheritance upon the entry of the temporary decree. If the majority construction is correct, then the adoption of § 56-109, and particularly subsection (c), was a vain and useless action by the General Assembly.

There is another significant provision of the statute. After six months from the entry of the temporary decree, the petitioner *may* apply for a final decree. This provision certainly properly makes the entry of the final decree depend upon the option of the adopting parent. There is nothing whatever to indicate that this

option may be exercised by the personal representative of the adopting parent after his death. Certainly this option should not be exercised by a personal representative who is also the natural parent of the children who would be benefited by the final decree being entered. It is certain that the legislature intended that the temporary decree effect a temporary adoption for experimental purposes. Provision is made for hearing upon any objections made to the adoption. But this hearing certainly can never be held unless the prospective adopting parent petitions for the final decree. Obviously, a parent who intended to adopt children might well find that making the adoption final was inadvisable because of any number of matters occurring in the intervening period. Most of all, this person might during the experimental period find that he was not particularly suited to be a parent or that the child was not particularly adaptable to his home.

I find nothing in any of the cases cited in the majority opinion that reaches the point involved here or that would lead to the construction given to the statute by the majority. Certainly they do not overrule the *Minetree* case.

I would reverse the judgment of the probate court.

BYRD, J., joins in this dissent.