Charles P. DUNN, Plaintiff,

v.

Elliott L. RICHARDSON, Secretary, Department of Health, Education and Welfare, Defendant.

No. HS 69–C–29.

United States District Court,
W. D. Arkansas,
Hot Springs Division.

Jan. 19, 1972.

Robert D. Ridgeway, Hot Springs, Ark., for plaintiff.

Robert E. Johnson, Asst. U. S. Atty., Fort Smith, Ark., for defendant.

## MEMORANDUM OPINION

OREN HARRIS, Chief Judge.

The plaintiff brings this action under the provision of Section 205(g) of the Social Security Act, 42 U.S.C.A. § 405(g), for judicial review of the final decision of the Secretary of Health, Education and Welfare denying the claim of the plaintiff, Charles P. Dunn, for child's insurance benefits on behalf of Jackie Lynn Dunn and Jayce Dean Dunn, minors, under Section 202(d) of the Act, 42 U.S.C.A. § 402(d).

The plaintiff became entitled to and was awarded Social Security disability benefits in July, 1957. He continued to receive disability benefits until he became eligible to receive old-age insurance benefits commencing August, 1963. He has since continued to receive and is still receiving old-age insurance benefits. This claim is based on his social security earnings record and entitlement to old-age insurance benefits.

The plaintiff's application for benefits on behalf of the minor children in question in this proceeding was filed March 19, 1968. He had previously applied for similar benefits June 14, 1967. The Social Security Administration denied the 1967 application pursuant to a provision of Section 202(d) of the Act, which at that time provided that a child adopted subsequent to the 24-month period immediately following the wage earner's entitlement to disability insurance began, could not satisfy the Act's dependency requirement.[1]

1. Section 202(d) of the Act, 42 U.S.C.A. § 402(d), as relevant in this action, provides:

"(d) (1) Every child (as defined in section 416(e) of this title) of an individual entitled to old-age or disability insurance benefits, * * * if such child—

"(A) has filed application for child's insurance benefits,
" * * *, and
"(C) was dependent upon such individual—

* * * * *

"(iii) if such individual had a period of disability which continued until he became entitled to old-age or disability insurance benefits, * * * at the beginning of such period of disability or at the time he became entitled to such benefits,

"shall be entitled to a child's insurance benefit for each month, beginning with the first month after August 1950 in which such child becomes so entitled to such insurance benefits * * *

* * * * *

"(8) In the case of—
"(A) an individual entitled to disability insurance benefits, or
"(B) an individual entitled to old-age insurance benefits who was entitled to disability insurance benefits for the month preceding the first month for which he was entitled to old-age insurance benefits,

"a child of such individual adopted after such individual became entitled to such disability insurance benefits shall be deemed not to meet the requirements of clause (i) or (III) of paragraph (1) (C) of this subsection unless such child—

As the plaintiff, Charles P. Dunn, became entitled to disability insurance benefits in July, 1957, his application of June 14, 1967, on behalf of the minor children was not pursued beyond the administration level, obviously due to the 24-month limitation. The record discloses that the children were not legally adopted within the 24-month period after the plaintiff became entitled to disability insurance benefits.

Subsection (8) (E) was added to Section 202(d) by Section 112 of Public Law 90–248 effective January 2, 1968. This amendment is applicable only to a child's insurance benefits payable for months after January, 1968, based on applications filed after January 2, 1968. The amendment in part pertinent here, provides:

"A child of such individual  *  *  *

"(E) was legally adopted by such individual—

"(i) in an adoption which took place under the supervision of a public or private child-placement agency,"

" *  *  * *"

The application[2] which is the subject of this litigation filed on March 19, 1968, was considered by the Social Security pursuant to the amendment by Public Law 90–248 (January 2, 1968) which provided benefits for certain children whose adoption by the wage earner was supervised by a child-placement agency even though they were not adopted within 24 months after the wage earner's entitlement to disability insurance benefits. This application was denied for the reason that the wage earner's adoption of the children-claimants was not supervised by a child-placement agency. Reconsideration was requested and on reconsideration the initial decision was affirmed and the application administratively denied.

Dissatisfied with this determination, the plaintiff requested that the application be considered by a Hearing Examiner of the Social Security Administration as provided by the Social Security Act. After proper notice, a hearing was held before the Hearing Examiner on April 17, 1969, at Hot Springs, Arkansas, with the claimant, plaintiff herein, present and participating. He was represented at the hearing by his attorney, Honorable Robert D. Ridgeway. On consideration of the entire record, the Hearing Examiner issued a decision on July 14, 1969, to the effect that Jackie Lynn Dunn and Jayce Dean Dunn could not qualify for benefits as the wage earner's children, concluding that the adoption was not made under the supervision of a child-placement agency as required by the Social Security Act, as

---

"(C) is the natural child or stepchild of such individual (including such a child who was legally adopted by such individual), or

"(D) was legally adopted by such individual before the end of the 24-month period beginning with the month after the month in which such individual most recently became entitled to disability insurance benefits, but only if—

"(i) proceeding for such adoption of the child had been instituted by such individual in or before the month in which began the period of disability of such individual which still exists at the time of such adoption (or, if such child was adopted by such individual after such individual attained age 65, the period of disability of such individual which existed in the month preceding the month in which he attained age 65), or

"(ii) such adopted child was living with such individual in such month; or

"(E) was legally adopted by such individual—

"(i) in an adoption which took place under the supervision of a public or private child-placement agency,

"(ii) in an adoption decreed by a court of competent jurisdiction within the United States,

"(iii) on a date immediately preceding which such individual had continuously resided for not less than one year within the United States;

"(iv) at a time prior to the attainment of age 18 by such child."

2. Pursuant to Social Security Administration Regulation No. 4, § 404.940, 20 C.F.R. § 404.940, the Secretary's decision on the 1967 application is final and no longer subject to review.

amended. Accordingly, the Hearing Examiner denied the application.

The decision of the Hearing Examiner was appealed to the Bureau of Hearings and Appeals, Social Security Administration. The Appeals Council denied review on October 7, 1969, and the Hearing Examiner's decision became the final decision of the Secretary.

█ The judicial review by this Court is limited. 42 U.S.C.A. § 405(g); O'Brien v. Finch, 415 F.2d 802 (1969); Melnick v. Finch, 305 F.Supp. 441 (1969) affirmed 3 Cir. 1970, 432 F.2d 1004.

The issue is twofold. Was the Secretary's decision that the children-claimants, Jackie Lynn and Jayce Dean Dunn, failed to satisfy the dependency requirement of the Social Security Act because their adoption by the wage earner (after 24 months from the beginning of his entitlement to disability insurance benefits) and *not* supervised by a child-placement agency, conforms to the applicable law and, if so, is it supported by substantial evidence in the record? The answers depend on whether the minor children qualify under the pertinent provision of the act and regulation as children of the plaintiff, wage earner, for purposes of entitlement to child's insurance benefits.

The Examiner concluded that the plaintiff, wage earner, became entitled to disability insurance benefits effective July, 1957, since which time he was paid disability insurance benefits until August, 1963. At that time he became entitled to retirement insurance benefits and has been paid retirement insurance benefits since. The Examiner further concluded that the children are the natural grandchildren of the plaintiff and that they were adopted by the plaintiff on June 12, 1967, as evidenced by temporary order or decree of adoption issued by the Probate Court of Garland County, Arkansas, a court of competent jurisdiction. A final decree of adoption had not been entered of record at the time of the Examiner's decision July 14, 1969.

The record further discloses that the Probate Court of Garland County, Arkansas, determined and entered an order on May 9, 1960, that the natural parents of the children were not the proper persons to have custody. The Arkansas Department of Public Welfare at the time had custody of the children and the court directed that custody of the children be relinquished to the plaintiff, Charles P. Dunn, and his wife, now deceased.

The Court's order was temporary and pursuant thereto, the Arkansas Department of Public Welfare was directed to observe the conduct and welfare of the children and plaintiff and to render a further report to the court at the end of forty-five days as to whether the custody should be made permanent. There is nothing in the record to disclose that any further action was taken by the Arkansas Department of Public Welfare with reference to the care, custody, control or adoption of the minor children.

The temporary order of May 9, 1960, designating the plaintiff and his wife as temporary guardians was issued by the court pursuant to a petition filed by the Arkansas Department of Public Welfare. It purportedly conferred authority upon the plaintiff its consent to adoption without notice or consent of the natural parents. The purpose of the temporary order which by its terms was effective for forty-five days only to permit further investigation by the Arkansas Department of Public Welfare to determine whether the plaintiff, in view of his advanced age, was a suitable person for appointment as guardian. Previous to the filing of the petition the Arkansas Department of Public Welfare had custody and control of the children and presumably had authority to consent to their adoption and supervision of the adoption. The Department had the children placed in a private home for a period of time and they were supported by public welfare funds made available through the Arkansas Department of Public Welfare. Although the Arkansas Department of Public Welfare had an

obligation to report suitability of the plaintiff as guardian to the court within the forty-five day period, there is no record that such report was ever made or that the Department ever maintained any subsequent interest or activity in connection with the welfare of the children.

Nevertheless, the plaintiff and his wife continued as guardians for the children until her death, and the plaintiff since, supporting and having complete custody.

On June 12, 1967, the Garland County Probate Court entered a temporary order of adoption by plaintiff. The natural mother of the children had abandoned them and the natural father had previously given his consent to their adoption. The abandonment and consent evidentially occurred prior to 1960.

The Child Welfare Division of the Arkansas Department of Public Welfare has statutory authority when directed by the court to make investigations to determine whether the adopted parent or parents are financially able and morally fit to assume the care, supervision and training of a person to be adopted and to make recommendations to the court regarding the advisability. Under certain circumstances the Department has the right to consent to an adoption and to supervise the same.

The temporary order of the court which gave custody of the children to the grandparents as guardians May 9, 1960, was amended "nunc pro tunc" on April 5, 1968, to delete any reference to or observation by the Welfare Department.

Although the plaintiff was not formally made permanent guardian of the children, it is undisputed that he has had custody of the children and has been their sole support since 1960. The interlocutory order of temporary adoption June 12, 1967, continues without any final decree of adoption having been issued.[3]

The only person with the Arkansas Department of Public Welfare that had any contact with the plaintiff, since the 1960 petition and court order, was a department case worker who interviewed the plaintiff in 1965. However, she explained that she had not been connected with the Child Welfare Division and that her contact with the plaintiff involved another matter entirely. She further stated that although she did refer the plaintiff to the Social Security Administration, the Welfare Department did not supervise the adoption of the children.

The Hearing Examiner concluded that although the adoption decree of 1967 was by temporary order, it would be accepted as effecting a legal adoption under Arkansas law. Ark. Stat.Ann. 56–108; Williams v. Nash, 247 Ark. 135, 445 S.W.2d 69; A. v. B., 217 Ark. 844, 233 S.W.2d 629. Since almost ten years intervened from the time the plaintiff became entitled to disability insurance benefits until the interlocutory order, it is quite obvious that the plaintiff's adoption of the children fails to satisfy 202(d) (8) (D) of the Act. Bray v. Gardner, 268 F.Supp. 328 (E.D. Tenn., 1967).

The defendant's brief raises the question of the theory of "equitable adoption" being available to the plaintiff. It is admitted that the Secretary recognizes the state law theory of "equitable adoption" for the limited purposes of conferring a child's status under Sec-

---

3. Ark.Stat.Ann. 56–108 provides that if the court which hears evidence on an adoption petition finds that the specified requirements are satisfied, it shall issue a temporary decree of adoption and that from the date of that decree, the children shall be to all legal intents and purposes the children of the petitioner. This section provides further:

"After six [6] months from the entry of said temporary decree the petitioner may apply for a final decree and if no objections be made thereto by any person or agency, the same shall be granted. Upon objections being made, however, the court shall hear the same and shall thereupon make such orders as may be necessary."

tion 216(h) (2) (A) of the Act. This is a theory by which under the law of certain states the child has certain inheritance rights of the estate of an individual who contracted to adopt him but did not do so. The question here is not the child's status under Section 216(h) (2) (A), but rather dependency under the provision of Section 202(d) (8) of the Act. There is nothing in the record to the effect that a contract was entered into to adopt the children within the 24-month grace period. Even though there was an implied consent to adopt when custody of the children was provided in the court's temporary order of May 9, 1960, in Arkansas a contract must be established by clear, cogent and convincing evidence. Stanley v. Wacaster, 206 Ark. 872, 178 S.W.2d 50.

█ Furthermore, under Arkansas law adoption calls for more extensive investigation and supervision than does mere guardianship. Ark.Stat.Ann. 56–108, 56–109; see Ark.Stat.Ann. 57–101, 57–206.

The thrust of the plaintiff's argument is that the supervision of the Arkansas Department of Public Welfare in connection with the temporary guardianship order of May 9, 1960, continued through the adoption proceedings seven years later. It is true the Department may have had such authority, but the Examiner correctly held that it did not assert it.

The statute provides that the adoption actually be supervised by a child-placement agency. It is undisputed that the Arkansas Department of Public Welfare, Child's Division, qualifies as a child-placement agency. Social Security Regulation No. 4, § 404.323(c) (1) (3) [4] provides that a child-placement agency must have been, prior to the final adoption decree, "significantly involved" by making an investigation to determine the proposed arrangement or by issuing a report or by making recommendations to the court. There is substantial evidence in the record to the effect that the Department of Welfare did not exercise such function as a child-placement agency either by making an investigation as to the adoption or by issuing a report or by making recommendations to the court.

█ It is well established in this and other circuits that the claimant has the burden of establishing his claim; that the Social Security Act is remedial and is to be construed liberally; that the Secretary's findings and the reasonable inferences drawn from them are conclusive if they are supported by substantial evidence; that substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; and that it must be based on the record as a whole. Brasher v. Celebrezze, 340 F.2d 413, 414 (8 Cir.

4. 20 C.F.R. § 404.323(c) (1) (3):
  "(c) *Adoption under the supervision of a public or private child-placement agency.*
  (1) *Public child-placement agency.* For the purposes of paragraph (a) (5) (iii) of this section, the term 'public child-placement agency' means any governmental agency authorized by a State (including the District of Columbia and the Commonwealth of Puerto Rico), or local governmental agency or component of either to place children in a private home for adoption. The term does not include a court; it also does not include a court investigator, juvenile officer, probation officer, or other governmental official or agency appointed solely for the purpose of conducting an investigation for the court in an adoption proceeding unless such governmental official or agency has the

authority to place children in private homes for adoption.
  " * * *
  "(3) *Supervision by a child-placement agency.* For purposes of paragraph (a) (5) (iii) of this section, the term 'supervision of a public or private child-placement agency' means that such agency as defined in subparagraphs (1) and (2) of this paragraph, prior to the final decree of adoption, was significantly involved in the adoption by making an investigation to determine the suitability of the adopting parent and the eligibility of the child for adoption, or by issuing a report of such suitability and eligibility, or by making recommendations to the court having jurisdiction of the adoption proceedings."

1965); Easttam v. Secretary, H. E. W., 364 F.2d 509 (8 Cir. 1966).

Since the adoption was not made under the supervision of a public or private child-placement agency, the final decision of the Secretary in adopting the Hearing Examiner's decision, that the children-claimants, Jackie Lynn and Jayce Dean Dunn, failed to satisfy the dependency requirement of the Act, conforms to the applicable law and is supported by substantial evidence.

The motion for summary judgment on behalf of the Secretary will be sustained and the complaint of the plaintiff dismissed.

An order will be entered accordingly.