Pamela SCHRUM, by Her Mother and Next Friend, Irene Craig GAITHER *v.* Elbert Glen BOLDING et ux

76-28                                                    539 S.W. 2d 415

Opinion delivered July 6, 1976
[Rehearing denied September 13, 1976.]

*Eubanks, Files & Hurley,* for appellant.

*Howell, Price, Howell & Barron,* for appellees.

JOHN A. FOGLEMAN, Justice. This tragic case involves the infant child of adolescent parents and the problems of society in endeavoring to make the best of the means at hand to suitably provide for its future. It reaches us on appeal from a final decree of adoption and the denial of the minor mother's petition to annul an interlocutory decree. We find merit in her contention that the probate court erred in failing to set aside the interlocutory order and reverse.

This child, Terry Lynn Schrum, was born in Bartlesville, Oklahoma on February 20, 1974 to Tim Schrum and Pamela Schrum. Pamela was born April 14, 1958 and was married to Tim on September 21, 1973. They have been separated more than once. They first separated in May, 1974. After a brief stay in a crowded apartment with her mother's friend, Pamela took the baby in June or July, 1974, and moved into the home of the adopting parents, Glen and Eloise Bolding, with her friend and their daughter, Connie, while Mrs. Bolding was in the hospital.

There is considerable conflict in the testimony about the circumstances and events leading up to a trip on September 16, 1974 to the office of appellees' attorney, by Mrs. Bolding, and Tim and Pamela Schrum, where the parents executed an entry of appearance in the adoption proceeding and their consents to adoption. Pamela testified that she had been

physically assaulted and threatened by her husband when she objected to his proposal that the Boldings be permitted to adopt their young baby. She also said she went along because she was afraid of him, because she had no means of supporting the baby since her husband had refused to do so, and because Mrs. Bolding threatened to call the welfare department to take the child away from her and place him where Pamela could never see him if she did not consent to the adoption. Much of this testimony is controverted, but evidence of Pamela's reluctance to agree to the adoption and her being upset after she had told her sister and mother what had been done on the same day she signed the entry and consent is not substantially controverted. Shortly after the signing of the consent Pamela moved away from the Bolding residence, either because of her dissatisfaction or because she was asked to leave (contrary to promises allegedly made her) depending upon whose version of the matter is accepted. To say the least, Mrs. Bolding was aware of Pamela's dissatisfaction with the arrangement within approximately one month after the consent was signed. Mrs. Gaither, Pamela's mother, said that, when Pamela asked whom to call, she referred her to the only attorney she knew. The petition was filed by this attorney (who later withdrew) six weeks after the entry of the interlocutory order.

The petition for adoption and entry of appearance and consent were filed on September 18, 1974, the day on which an interlocutory decree of adoption was entered. On October 31, 1974, Pamela, by her mother as next friend, filed her petition to annul the adoption, alleging that she was coerced by her husband to sign a consent to the adoption. She prayed that the interlocutory order be rescinded and all action on the matter nullified and that the child be returned to her. During the course of the proceeding,. Pamela's father, Billy Bob Sullivan, was appointed guardian ad litem to defend for her. After a hearing on October 3, 1975, the probate court entered its final decree of adoption on October 17, 1975, finding that Pamela's consent was valid, that the evidence was insufficient to show that fraud was practiced on her or that she was overreached, that the statutory procedure for waiver, entry of appearance and consent to adoption was complied with, that Pamela's attempted revocation of consent was made after this interlocutory decree was entered, that more than six months

had expired since the entry of the interlocutory decree, that it was in the best interest of the baby that her mother's request for withdrawal and quashing of her consent be denied, and that a final decree of adoption should be entered. The probate court further found that the minority of the mother did not bar or vitiate her consent and that the adoption laws had been substantially complied with.

Appellant questions the jurisdiction of the probate court over her person, saying that the failure to set aside the interlocutory order deprived her of due process of law under the state and federal constitutions. While it is true that substantial compliance with adoption laws is generally sufficient to satisfy due process requirements, we must agree with appellant that, by reason of the fact that no process was served on her prior to the entry of the interlocutory order on the same day the petition was filed, the interlocutory decree should have been set aside.

Ark. Stat. Ann. § 56-104 (Repl. 1971) requires that all persons whose consent to adoption is required be made defendants by name and notified of the proceedings by summons in the manner required by law in chancery proceedings. Of course, parents are in the category of necessary parties. Ark. Stat. Ann. § 56-107 (Repl. 1971). Such a party is allowed 30 days to answer. § 56-104. The hearing on the petition is to follow expiration of the time for filing answer. Ark. Stat. Ann. § 56-108(Repl. 1971). In this case Pamela Schrum was not a named defendant and she was not served with process in any form. Service of summons would certainly be required in a chancery proceeding. See Ark. Stat. Ann. §§ 27-215, 27-336 (Repl. 1962). Furthermore, no judgment may be rendered against an infant until after a defense by a guardian. Ark. Stat. Ann. § 27-825 (Repl. 1962). A guardian ad litem cannot be appointed until after service of process. Ark. Stat. Ann. § 27-826 (Repl. 1962). Proof cannot be taken prior to the appointment of a guardian, in the absence of a statutory guardian, in order that the appointed guardian may have the opportunity of attending when proof is taken. *Dudley v. Dudley,* 126 Ark. 182, 189 S.W. 838. Judgment rendered against an infant without the appointment of a guardian ad litem, however, is not void, but is

irregular and reversible as voidable, in a proper proceeding. *Sauve* v. *Ingram,* 200 Ark. 1181, 143 S.W. 2d 541. In other words, failure to have a defense by guardian is error and would be basis for reversal of a judgment on appeal, or would require the setting aside of the judgment on motion before appeal. *Sauve* v. *Ingram,* supra. Of course, after the expiration of the term at which the judgment is rendered, one attacking a judgment on these grounds would be barred unless the infancy of the defendant appeared in the record. Ark. Stat. Ann. § 29-506 (Repl. 1962). After expiration of the term, the attack would have to be made under Ark. Stat. Ann. § 29-508 (Repl. 1962); *Ingram* v. *Raiford,* 174 Ark. 1127, 298 S.W. 507. A decree without service of process and defense by a guardian is clearly erroneous, but not necessarily subject to collateral attack. *Haley* v. *Taylor,* 39 Ark. 104; *Woodall* v. *Delatour,* 43 Ark. 521; *Morris* v. *Edmonds,* 43 Ark. 427; *Robinson* v. *Cline,* 255 Ark. 571, 501 S.W. 2d 244. See also, *Cannon* v. *Price,* 202 Ark. 464, 150 S.W. 2d 755; *Davie* v. *Padgett,* 117 Ark. 544, 176 S.W. 333.

The substitute for service of process was Pamela's entry of appearance. But a minor cannot waive the service of process. In *Moore* v. *Wilson,* 180 Ark. 41, 20 S.W. 2d 310, we so held, quoting the following from Ruling Case Law:

An infant can neither acknowledge nor waive the regular service of process upon him, though in some instances a regular service of summons slightly irregular in form was held to be a substantial compliance with the statute, and sufficient to give jurisdiction. ***** It is held in most of the cases that the lack of service of the infant is a fatal, because jurisdictional, defect, and cannot be cured by the appointment of a guardian ad litem, and his making actual defense for the infant, and this ruling seems consistent with the lack of power on the part of the guardian to bind the infant by his admissions or stipulations. A few courts have held, however, that even a lack of legal service does not render the judgment void, if the infant appeared, a guardian was appointed, and a proper defense was in fact made.

There was not the slightest suggestion that this principle

applied only to actions for damages or that it did not apply to statutory proceedings where the governing statutes did not specify otherwise. We do not take *Martin* v. *Ford,* 224 Ark. 933, 277 S.W. 2d 842 to hold to the contrary. There the questions raised with reference to notice and the lack of appointment of a guardian for the minor mother were by-passed because, when she appeared and testified, after her mother, as next friend, had filed an intervention protesting the adoption, she was of full age. This is not the case here. Furthermore, when the interlocutory decree was entered, nothing in the record disclosed that Pamela was a minor. It is clear that a guardian could not possibly have attended the hearing when the temporary order of adoption was entered.

The importance of these procedural requirements in this case is based upon the effect of the interlocutory decree. Prior to its entry, a consent to adoption may be withdrawn under appropriate circumstances, because there must be valid consent at the time of its entry. *Martin* v. *Ford,* supra; *Combs* v. *Edmiston,* 216 Ark. 270, 225 S.W. 2d 26. The lapse of time between the consent and the attempted revocation is an important circumstance. But the adoption is said to be effective at the time of the interlocutory order and the validity of consent is to be determined as of the date of that order. *A* v. *B,* 217 Ark. 844, 233 S.W. 2d 629. While it has been held that consent can be withdrawn after the interlocutory order, it is clear from these cases that a much stronger showing is required than on a withdrawal before entry of the order. *Martin* v. *Ford,* supra.

It also seems obvious that the burden of proof of validity of consent is different before and after the interlocutory decree. It is required that the court, at the time of entry of the temporary or interlocutory order, find from the evidence that there has been proper service of process as required by Ark. Stat. Ann. § 56-108 (Repl. 1971), that there is proper consent to the adoption, and that the adopting parent is morally, physically and financially fit to have custody of the adopted person. Ark. Stat. Ann. § 56-108 (Repl. 1971). Clearly the burden of proof on all these points would be on the petitioner. It is at least implied that one objecting to the adoption between the entry of the interlocutory decree and the final decree would bear the burden of proof, i.e., to show good

reason for setting aside the interlocutory order, which is otherwise effective as the adoption. *A* v. *B,* supra; *Williams* v. *Nash,* 247 Ark. 135, 445 S.W 2d 69.

This shifting of the burden of proof brings into play constitutional due process requirements, which have been held applicable to adoption proceedings. *Armstrong* v. *Manzo,* 380 U.S. 545, 85 S. Ct. 1187, 14 L. Ed. 2d 62 (1965). To hold that the order based upon entry of appearance here was not erroneous and voidable in view of the prompt attack made by the minor parent through her mother and next friend would violate constitutional due process requirements of Art. 2, § 18 of the Arkansas Constitution as well as the Fourteenth Amendment to the United States Constitution. The attack was made in the only manner available to appellant, because the interlocutory order was not appealable. Ark. Stat. Ann. § 56-111 (Repl. 1971).

We must reject appellee's arguments that Pamela was no longer a minor because she was emancipated by Ark. Stat. Ann. § 55-401 (Repl. 1971). It was not the intention of that act to remove the disabilities of minority. It was only designed to emancipate married women from disabilities attendant upon their marital status, i.e., it permitted her to enjoy all rights as though she were a femme sole. See *Harrod* v. *Myers,* 21 Ark. 592, 76 Am. Dec. 409. Marriage does not relieve a male of all his disabilities of minority. *Shinley* v. *Ricks,* 234 Ark. 767, 354 S.W. 2d 547. There is no reason why it should relieve a female of all such disabilities. *Harrod* v. *Myers,* supra.

Since we find error in this respect, we do not consider other questions raised or further discuss the effect of this decision upon them. The locus of the burden of proof in this case, where so much depends upon credibility, demands that we refrain from directing the judgment to be entered. It is clear that both the final and the temporary decree must be reversed because proper service of process was not had. There will be no necessity for new service, because an actual appearance has been made as effectively as the minor can do so and, in addition, both her mother, as next friend and her father, as guardian ad litem are before the court and acting in her behalf.

In remanding the case to the trial court for further proceedings, we cannot help expressing our concern for the welfare of this helpless baby. While we do not ordinarily say so in cases such as this, we feel very strongly that in this case the trial court should require a report by the Child Welfare Division under Ark. Stat. Ann. § 56-105 (Repl. 1971).

The decrees are reversed and the cause remanded for further proceedings consistent with this opinion.

BYRD, J., dissents from that portion of the opinion pertaining to the Welfare Division report.