Melanie Raye Jaecks TEMPLE *v.* Jack Anthony
TUCKER and Diana Lynn TUCKER

82-36                                    639 S.W.2d 357

Supreme Court of Arkansas
Opinion delivered September 27, 1982

82

*Gilbert L. Glover* and *Jean Turner Carter*, Legal Services of Arkansas, for appellant.

*Charles S. Gibson*, for appellees.

STEELE HAYS, Justice. On October 7, 1979, appellant, an unmarried minor, gave birth to a son. On January 31, 1980, she signed a consent to adoption by the appellees and an adoption hearing was held on April 28. The appellant was not present and no guardian ad litem was appointed for her. On May 6, a temporary decree of adoption was entered. On July 22, the appellant filed a petition to set aside the decree, alleging that the consent was not valid because no guardian ad litem had been appointed. On September 4, 1981, appellant's petition was dismissed and the adoption decree was made final. The appellant appeals from that ruling and argues that the interlocutory decree was in error because no guardian ad litem was appointed as required by *Schrum v. Bolding,* 260 Ark. 114, 539 S.W.2d 415 (1976) and by Arkansas Rules of Civil Procedure 17 (b). We affirm the Chancellor.

Under Arkansas' prior adoption laws, service of process was required even though a consent had been given, and if the consenting parent was a minor a guardian ad litem was

necessary. Arkansas' new adoption act (Act 735 of 1977) institutes a different procedure and no longer requires service of process if consent has been given. The act requires no service, notice, or any further participation by those who consent to an adoption. Since appellant has not challenged the new act on constitutional grounds, we need not consider whether it meets due process requirements. Rather, the question presented is whether Rule 17 (b) of the Arkansas Rules of Civil Procedure, requiring the appointment of a guardian ad litem, should be used to supplement the present adoption act where the consenting parent is a minor.

Appellant relies on *Schrum* v. *Bolding*, decided in 1976, before the passage of the Revised Uniform Adoption Act. Ark. Stat. Ann. §§ 56-201 — 56-221 (Supp. 1981). Under Arkansas law in effect prior to *Schrum* all persons whose consent to an adoption was required, regardless of whether consent was given, were to be named as defendants and were to receive notice of the proceedings by service of summons. Ark. Stat. Ann. § 56-104 (Repl. 1971). It was on this statute that the holding in *Schrum* was based. The minor mother in *Schrum* had waived service of process, but the Court pointed out that a minor cannot waive service of process, *Moore* v. *Wilson*, 180 Ark. 41, 20 S.W.2d 310 (1929), nor can a guardian ad litem be appointed until after service of process, Ark. Stat. Ann. § 27-826 (Repl. 1979), and no judgment can be rendered against an infant until a defense has been made by a guardian ad litem, Ark. Stat. Ann. § 27-825 (Repl. 1979). Under the current Revised Uniform Adoption Act, which streamlines the old adoption procedure, we have a totally different scheme. If consent has been given, notice to the consenting party is not required, nor is any further participation required of them. The new act makes this quite clear in Ark. Stat. Ann. § 56-207 (b):

Except as provided in section 12 notice of a hearing on a petition for adoption need not be given to a person whose consent is not required or to a person whose consent or relinquishment has been filed with the petition.

and again in § 56-212 (a), directing to whom notice shall be given:

> . . . to (1) any agency or person whose consent to the adoption is required by the Act but who has not consented and (2) a person whose consent is dispensed with upon any ground mentioned in subsections (1), (2), (6), (8) and (9) of subsection (a) of Section 7 of this Act.

Because the language of the RUAA is clear in dispensing with notice once the necessary consent is given, the holding in *Schrum* must be read in light of the prior adoption statutes which did require notice to all whose consent was required. Too, we take note of the fact that of the seven other states that have adopted the RUAA or substantially similar acts,[1] none has provided for or been construed as requiring a guardian ad litem.

Appellant argues that Rule 17 (b) requires the appointment of a guardian ad litem in proceedings where the consenting parent is an infant. We disagree. Once consent is given under the RUAA, it eliminates the need for any court appearance and any requirement that the person whose consent was given be a party to the proceedings. Rule 17 (b) contemplates an adversarial situation requiring a guardian ad litem whenever a minor has to "sue or defend." Under the statutory scheme of the RUAA, however, once consent has been given, the participation by the individual giving consent is finished. In contrast, had a minor mother not given consent and was contesting the adoption, the application of 17 (b) would be appropriate. We might point out the act does not preclude a careful practitioner from seeking the appointment of a guardian ad litem for a minor mother and certainly that precaution would lessen the probability of an attack on the adoption decree in a later proceeding, as occurred in this case, and of a subsequent contention that the minority of the parent contributed to an invalid consent. See 2 UALR L.J. 135 (1979).

---

[1]North Dakota, Arizona, Montana, New Mexico, Alaska, Oklahoma and Ohio.

We might well point out that the new adoption act provides yet another method of surrendering parental rights which is intended to be followed where the consenting mother surrenders her child, not directly to the adopting couple, as here, but to an agency, which may later place the child for adoption by parents it selects. The latter method is set out in Section 20 of the act (Ark. Stat. Ann. § 56-220 [Repl. 1971)] and provides that the consenting parent, regardless of age, can appear before a judge of a court of record or before a representative of the agency and relinquish her parental rights as well as the rights to later withhold her consent. Under this procedure the consenting parent has ten days in which to revoke her consent and the relinquishment is invalid unless this right of withdrawal is stated.

Appellant's other argument challenges the trial court's finding that the appellant gave a valid and informed consent to the adoption. We find the evidence sufficient to sustain the court's findings and not clearly against the preponderance of the evidence. We will not disturb the decision unless we find to the contrary. Rule 52 ARCP.

Affirmed.

HICKMAN and DUDLEY, JJ., dissent.

ROBERT H. DUDLEY, Justice, dissenting. The sole issue in this case is whether a minor parent has the capacity to execute a binding consent to adoption.

Melanie Temple, appellant, in August of 1979 was an indigent six months pregnant 15-year-old unmarried child. The Tuckers, appellees, had tragically lost their two children, one apparently before birth and the other only two hours after birth, and wanted to adopt a baby. They heard about Melanie's situation and also heard that the baby had already been promised to another couple. The Tuckers sought out Melanie and agreed to pay all of the costs of delivery in exchange for the child. After the infant was born on October 7, 1979, and after the Tuckers had paid some of the costs of delivery, Melanie decided to keep the baby.

Three months later Melanie's mother sent the infant to Texas to live with an aunt of Melanie's. On January 31, 1980, the Tuckers drove Melanie and her mother to the office of the Tuckers' attorney. There Melanie signed a consent form which was notarized by the attorney's secretary. Melanie testified that she did not want to sign the consent form but was forced to do so by her mother. The mother's testimony was fairly and accurately abstracted as follows:

Melanie didn't want to sign the Consent, but I made her because I wanted her to go to school, and get an education. She wasn't but 16. Her father has legal custody of her, not me, but I signed the papers to give the baby up. (T. 71) My daughter, Melanie Raye Jaecks signed the Consent to Adoption in my presence. I made her sign it. I made her let me take the baby to Texas for a month even though she didn't want to. She bawled and squalled, and I told her that she is going to go to school. I told her that she couldn't take care of him and to let me take him to Texas. Finally, she said, okay but not agreeably. I took him. Then the night that Diana and I came back with him, we wouldn't even come in the house because we knew that she was so emotionally tied to him that it would be best that she never see him. We even sent his chest, all of his clothes, everything to Jack and Diana, so we could get them out of the house where she wouldn't see them. They never came in the house with him (T. 72) because they knew that this was not really what Melanie wanted. It was what I wanted. They knew that we couldn't let her see the baby because she would cry every time we mentioned him.

I think Melanie first learned that the adoption had gone through in the latter part of July. I told her that I felt like I had to tell her that I got that letter in April and that her six months was not up if she wanted him. She said, "Yes, I want him." It was not her idea to consent to the adoption. I did all this (T. 73) because I wanted her to go to school. I guess I pushed her. (T. 74).

The majority opinion holds that the consent is binding

and that it, in turn, abrogates the need for service of process or notice.

It is important to note that the majority opinion does not cite any section of the Revised Uniform Adoption Act as authority for the proposition that a minor has the capacity to consent to adoption. The reason, quite obviously, is because there is no such authority in the adoption section of the act. An even more important statutory interpretation factor is omitted from the majority opinion and that is the General Assembly expressly repealed our previous statute, which, in part, provided:

> (d) The minority of a parent shall not bar or in any way vitiate his consent to an adoption. Ark. Stat. Ann. § 56-106 (d) (Repl. 1971).

It was solely on the basis of this previous statute that we held the minority of the parent was not a bar to the execution of a valid consent. *Martin* v. *Ford,* 224 Ark. 993, 227 S.W.2d 842 (1955); *Combs* v. *Edmiston,* 216 Ark. 270, 225 S.W.2d 26 (1949).

Absent some statutory authority to the contrary, a minor does not have capacity to execute a binding legal instrument. Such an instrument is voidable. 42 Am.Jur.2d *Infants* § 58 (1969). Thus, the minor parent lacked capacity to execute a consent which she could not legally avoid.

The essential reason to hold that the minor lacked capacity is one of public policy. The beginning of this dissenting opinion set out facts sufficient to alert one to the real danger in a case such as this — the markets for children. Those markets were described by Derden, Adoption, *Revised Uniform Adoption Act,* 2 UALR Law J. 135 (1979) as follows:

> [T]here are more parents who wish to adopt than there are available children. The basic economic principle of supply and demand dictates that the baby market is, and will continue to be, a seller's market. There are two distinct types of markets, referred to as a gray market

and a black market. The black market has been defined as independent adoptive placement in which a third party makes a profit. The gray market is similar but the profit motive is replaced by the good intentions of doctors, lawyers, friends, and parents.

It would be naive to contend that such activities are not occurring in Arkansas. In 1958 an attorney for the State Department of Public Welfare stated that "at least four examples of the outright sale of babies" had occurred in Arkansas. He went on to comment that the control against "the selling of flesh" in Arkansas was the high integrity of Arkansas judges and attorneys. . . . (Footnotes omitted.)

Because of public policy I would not subject a six months pregnant 15-year-old indigent to the gray or black markets, especially when the statute does not authorize it. I would follow either Rule 17 (b) ARCP and require the appointment of a guardian ad litem or require a proceeding under the termination of parental rights section of the act, Ark. Stat. Ann. § 56-220 (Repl. 1981). The majority does not. Thus, I dissent.

I am authorized to state that Mr. Justice Hickman joins in this opinion.