Ronnie ROE *v.* STATE of Arkansas,
CSEU *ex rel.* Evelyn Williams

90-222                                      804 S.W.2d 708

Supreme Court of Arkansas
Opinion delivered March 4, 1991.

*Robert S. Blatt* and *William J. Kropp, III*, for appellant.

*G. Keith Griffith*, for appellee.

JACK HOLT, JR., Chief Justice. This is a paternity case in which the appellee, State of Arkansas, County Support Enforcement Unit ex rel. Evelyn Williams (CSEU), sought to establish the appellant, Ronnie Roe, as the father of Mandie A. Williams, who was born on April 11, 1978, to Evelyn Williams.

At a hearing in the County Court of Crawford County on October 20, 1988, Mr. Roe requested blood testing pursuant to Ark. Code Ann. § 9-10-108 (1987). The County Court granted the request and appointed National Paternity Laboratories, Inc. (NPL) of Dayton, Ohio, to perform the tests. NPL submitted a written report indicating a 97.94% probability that Mr. Roe was the biological father of Mandie Williams. On January 27, 1989, the County Court found Mr. Roe to be the father of Mandie Williams.

A timely appeal was made to the Circuit Court of Crawford County, which subsequently transferred the case to the Chancery Court of Crawford County. A de novo hearing was held on October 6, 1989, as a result of which the chancellor determined that Mr. Roe was the father of Mandie Williams and ordered that he pay child support in the amount of $45.00 per week.

Mr. Roe appeals and alleged two points of error: 1) that the chancellor abused his discretion in admitting into evidence a

blood test which, by court order, was performed outside the subpoena power of the court, and 2) that the State's evidence fails to establish that he is the father of the child. CSEU cross-appeals contending the chancellor erred in not setting support in accordance with the Family Support Chart.

## DIRECT APPEAL

Initially, Mr. Roe argues that the chancellor's admission into evidence of NPL's report effectively denied him his right to confront and cross-examine the experts who performed the test because the out-of-state laboratory and its experts were outside the subpoena power of the court.

Arkansas Code Ann. § 9-10-108 (Supp. 1989) addresses blood tests in a paternity action and provides in pertinent part as follows:

(a)    At the request of either party in a paternity action, the trial court shall direct that the defendant, complainant, and child submit in one (1) or more blood tests or other scientific examinations or tests . . . to determine whether or not the defendant can be excluded as being the father of the child and to establish the probability of paternity if the test does not exclude the defendant.

(b)    The tests shall be made by a duly qualified physician or physicians, or by another duly qualified person or persons, not to exceed three (3), to be appointed by the court.

(c)(1) The results of the tests shall be receivable in evidence.

(c)(2)(A)    A written report of the test results by the duly qualified expert performing the test, or by a fully qualified expert under whose supervision and direction the test and analysis have been performed, certified by an affidavit duly subscribed and sworn to by him before a notary public, may be introduced in evidence in illegitimacy actions without calling the expert as a witness. *If either party shall desire to question the expert certifying the results, the party shall have the expert subpoenaed within a reasonable time prior to trial.*

(c)(2)(B)   If the results of the paternity tests establish a ninety-five percent (95%) or more probability of inclusion that the defendant is the natural father of the child and after corroborating testimony of the mother in regard to access during the probable period of conception, such shall constitute a prima facie case of establishment of paternity and the burden of proof shall shift to the defendant to rebut such proof.

\*       \*       \*       \*

(c)(3)   The experts shall be subject to cross-examination by both parties after the court has caused them to disclose their findings.

\*       \*       \*       \*

(Emphasis added.)

Further, in *Thomas* v. *Pacheco*, 293 Ark. 564, 740 S.W.2d 123 (1987), we held that:

. . . if a county judge is going to use a nonresident firm or individual to perform blood tests in bastardy proceedings, it is his responsibility to see that the person performing the blood test is available for trial, if the proof requires his presence, as though that person were an Arkansas resident; he must be subject to subpoena just as the statute provides.

However, Mr. Roe's reliance on *Thomas* v. *Pacheco, supra,* and *Chandler* v. *Baker,* 16 Ark. App. 253, 700 S.W.2d 378 (1985), is misplaced. In *Thomas,* a non-resident expert subpoenaed by the appellant refused to honor the subpoena; the trial court ruled that under the circumstances a telephone deposition of another doctor was a reasonable alternative, and we found that the trial court abused its discretion in doing so. In *Chandler,* section 9-10-108(c)(2)(A) applied only to the State Medical Examiner at the time that case was tried.

In this case, Mr. Roe requested the blood test, yet never attempted to subpoena the experts who conducted the tests at NPL. It was his sole responsibility, under section 9-10-108(c)(2)(A), to have had the experts subpoenaed within a reasonable time prior to trial. Consequently, his inability to confront or cross-examine the experts was brought about by his

own inattention to our code requirement to subpoena witnesses under these circumstances. Roe's claim is without legitimate basis.

Next, Mr. Roe claims that the State's evidence fails to establish that he is the father of the child. Pursuant to section 9-10-108, a prima facie case of paternity exists after the establishment of test results of a 95 % or more probability of paternity and corroborating testimony of the mother regarding access during the probable period of conception.

■ In *Aldridge* v. *Tyrrell*, 301 Ark. 116, 782 S.W.2d 562 (1990), we noted that on appeal, we consider the evidence in the light most favorable to the appellee, and, although we try chancery cases de novo on the record, we will not reverse a finding of fact by the chancellor unless it is clearly erroneous.

■ In this case, the test results indicated a 97.94 % probability that Mr. Roe is the father of Mandie Williams. Additionally, Evelyn Williams, Mandie's mother, testified that she had sexual intercourse with Mr. Roe in July 1977 and that she had sex with no other man besides Mr. Roe from June 1977 until she knew that she was pregnant. Although Mr. Roe highlights Ms. Williams' opinion that conception occurred in August 1977, which would not correlate with a full-term nine month pregnancy resulting in Mandie's birth on April 11, 1978, we agree that Ms. Williams' testimony establishes access, both in place and time, for conception. Mr. Roe's blanket denial of having sexual relations with Ms. Williams and testimony that he was out-of-state during the period of conception is a matter of credibility of the witnesses, and we defer to the chancellor's evaluation. *Germer* v. *Missouri Portland Cement Co.*, 301 Ark. 277, 783 S.W.2d 359 (1990).

Accordingly, the chancellor's determination that Mr. Roe is Mandie Williams' father is not clearly erroneous.

## CROSS-APPEAL

CSEU cross-appeals on the basis that the chancellor erred in not setting support in accordance with the Family Support Chart.

Arkansas Code Ann. § 9-10-109 (Repl. 1991) addresses child support following a finding of paternity and provides in

pertinent part as follows:

> (a) Subsequent to the finding by the chancery court that the defendant is the father of the child, the court shall follow the same guidelines, procedures, and requirements as set forth in the law of this state applicable to child support orders and judgments entered by the chancery court as if it were a case involving a child born of a marriage in awarding custody, visitation, setting amounts of support costs and attorneys' fees, and directing payments through the clerk of the court.

*  *  *  *

Arkansas Code Ann. § 9-12-312 (Repl. 1991) addresses child support and provides in pertinent part as follows:

> (a)(2) In determining a reasonable amount of support, initially or upon review to be paid by the noncustodial parent, the court shall refer to the most recent revision of the family support chart. It shall be a rebuttable presumption for the award of child support that the amount contained in the family support chart is the correct amount of child support to be awarded. Only upon a written finding or specific finding on the record that the application of the support chart would be unjust or inappropriate, as determined under established criteria set forth in the support chart, shall the presumption be rebutted.

In this case, Mr. Roe testified that he had a net take-home pay of $468.00 per week, and he also had custody of two children from a prior marriage. The chancellor awarded Ms. Williams $45.00 per week in child support; however, in utilizing the Weekly Family Support Chart, *see* our per curiam *In Re: Guidelines For Child Support Enforcement* (February 5, 1990), we are unable to determine the basis upon which the chancellor made his award, as the amount apparently is not in conformance with the presumptive figures contained in the chart.

In short, the record is insufficient for a de novo review. As there is no written or specific finding that the support amount reflected in the family support chart is unjust or inappropriate, or that there are factors, such as court-ordered support of his other children, that would require a deduction in the assessment of

Roe's weekly take-home pay, we remand to the trial court for a determination of child support in conformance with section 9-12-312 and our guidelines for child support enforcement.

Affirmed in part; remanded in part.