ERWIN L.D. *v.* MYLA JEAN L.

CA 92-346                                         847 S.W.2d 45

Court of Appeals of Arkansas
Division II
Opinion delivered February 10, 1993

 

*Erwin L. Davis*, for appellant.

JUDITH ROGERS, Judge. Appellee, Myla Jean L., brought this action against appellant, Erwin L. D., claiming that appellant was the father of her child born on July 26, 1990. The chancellor decided this disputed issue in favor of appellee and entered an order to that effect, requiring appellant to pay $250 a month in support for the child. For reversal of the chancellor's decision, appellant questions the finding of paternity, and he also contends that the trial court erred by not considering his defenses of "birth control fraud" allegedly perpetrated by appellee, and estoppel based on her assurances that she would not pursue a paternity action. We find no merit in the issues raised, and affirm.

At the hearing, it was revealed that the parties had married in February of 1989, but that they had divorced in October of that same year. However, both appellant and appellee acknowledged that, despite the divorce, they maintained a sexual relationship until March of 1991. Before their final separation, appellee gave birth to a child prematurely on July 26, 1990. According to appellee, the probable time of conception was early December of 1989, and it was her testimony that she had only been intimate with appellant during that period of time. She denied having sexual contact with any other man. Appellee further testified that it was understood between them that appellant was the father of the child. She related that, when she went into labor prematurely and was transported from Fayetteville to Tulsa, appellant followed the ambulance to Tulsa and that he stayed the night with her and part of the next day. She also stated that appellant had visited with the child and that he had demanded visitation with her after the petition for paternity was filed.

In his testimony, appellant conceded that he and appellee had intercourse during the months of October, November and December of 1989, and at times thereafter. He said, however, that their relationship was not smooth, describing it as one that was "off and on." Appellant suggested that appellee was seeing other men during those periods when they were estranged, and he stated that appellee told him that she had been sexually involved with various men. He said that he had no way of knowing who the father of the child was, but that at times he considered himself to be the child's father. He stated, however, that this belief was based only on appellee's representations. He also said that appellee had on occasion professed that he was not the father of the child.

Appellant first argues that appellee failed to meet her burden of proof. It is his contention that, in the absence of blood testing, proof of paternity must be established by clear and cogent evidence. He contends that appellee did not meet this burden based on conflicts and inconsistencies in her testimony.

Contrary to appellant's argument, in a paternity proceeding brought against a living putative father, the mother's burden of proof is a mere preponderance of the evidence, as the proceeding is civil in nature. *Stewart* v. *Winfrey*, 308 Ark. 277, 824 S.W.2d 373 (1992). On appeal, we consider the evidence in the light most favorable to the appellee, and, although we try chancery cases *de novo* on the record, we will not reverse a finding of fact made by the chancellor unless it is clearly erroneous. *Roe* v. *State*, 304 Ark. 673, 804 S.W.2d 708 (1991). The alleged conflicts and inconsistencies in the testimony presented a question of credibility, which is a matter we leave to the trial court. *See Green* v. *Bell*, 308 Ark. 473, 826 S.W.2d 226 (1992). The chancellor obviously found appellee's testimony persuasive. From our review of the record as a whole, we cannot say that the chancellor's decision is clearly against the preponderance of the evidence.

Appellant next argues, without citation to authority, that the trial court erred in not holding that appellee was precluded from seeking a paternity determination based on "birth control fraud" and her pledge that she would not bring a paternity action. Appellant maintained that appellee indicated that she was using

birth control pills, and further, that she assured him after she had become pregnant that she would not file suit for paternity to obtain support. Appellee denied these allegations. Other than to note that the testimony was conflicting, we need not discuss the evidence any further for we hold that neither claim provides a valid defense in paternity litigation.

In *Paul M.* v. *Teresa M.*, 36 Ark. App. 116, 818 S.W.2d 594 (1991), we rejected the notion that a father could assert a counterclaim against a mother in a paternity proceeding based on her agreement to assume sole financial responsibility for the child. We held that such an agreement failed for lack of consideration and, more importantly, was void as against public policy as an attempt to permanently deprive the child of support. The justification for the latter part of our decision rested on the settled law that the duty of child support cannot be bartered away permanently to the detriment of the child. Likewise, we hold that a mother's agreement or assurances that she would not pursue a paternity action to request support cannot validly be interposed by a putative father as a defense.

We also cannot endorse appellant's proposition that birth control fraud can act as a bar to a claim of paternity. Courts that have confronted the issue have refused to recognize misrepresentations concerning the use of contraceptives as a defense. *See e.g. Faske* v. *Bonanno*, 357 N.W.2d 860 (Mich. Ct. App. 1984); *Hughes* v. *Hutt*, 455 A.2d 623 (Pa. 1983); *Pamela P.* v. *Frank S.*, 449 N.E.2d 713 (N.Y. 1983). In *Paul M.* v. *Teresa M.*, *supra*, we observed that the purpose of our filiation laws was to provide a process whereby the putative father can be identified so that he may assume his equitable share of the responsibility to his child. To permit this defense, as one that assigns fault for conception, would result in the denial of support to innocent children whom the law was designed to protect.

Affirmed.

COOPER and ROBBINS, JJ., agree.