Scott HAMM *v.* OFFICE OF CHILD SUPPORT
ENFORCEMENT

98–228                                   985 S.W.2d 742

Supreme Court of Arkansas
Opinion delivered February 18, 1999

*John Wesley Hall, Jr.*, for appellant.

G. *Keith Griffith*, for appellee.

TOM GLAZE, Justice. This paternity suit resulted from two children having sexual intercourse as young teenagers. Susan N. Atkinson was fifteen years old and Scott Hamm, the putative father, was thirteen years old when their sexual encounters occurred and when Susan conceived a male child, who was born on July 22, 1995, and named Keegan. Susan applied for and received financial assistance from Aid for Dependent Children through the State, and as a result, the State Office of Child Support Enforcement (OCSE) was obliged under Ark. Code Ann. § 9-14-201(d) (Repl. 1998) to bring this paternity action to seek reimbursement of benefits from Scott as Keegan's father. Scott's parents pursued a separate criminal charge of statutory rape against Susan, and that charge resulted in Susan pleading guilty to second-degree sexual abuse, a Class A misdemeanor. *See* Ark. Code Ann. § 5-14-109 (Repl. 1995).

After a hearing was held in the paternity action, the chancellor found Scott to be Keegan's father. However, the chancellor ordered that, because of Scott's age, Scott need not pay child support at the time, and denied the OCSE reimbursement of birthing expenses. The chancellor further ordered Scott to pay OCSE the costs of genetic testing and to keep OCSE advised on whether health insurance coverage was available. Scott brings this appeal and argues the chancellor erred in (1) finding Scott to be the father of Keegan, (2) refusing to apply the equitable doctrine of clean hands to bar OCSE's paternity claim because Scott was a victim of a crime, and (3) finding Scott had been personally served and had waived service of summons after the OCSE filed this lawsuit.

We first address Scott's argument that OCSE had failed to serve him with the complaint and summons in this action, leaving the chancellor without authority to enter judgment against him. Scott refers to Ark. R. Civ. P. 4(d)(2) which requires that a copy of the summons and complaint must be served personally on a defendant who is fourteen years of age or older. He submits he was fourteen when OCSE filed this paternity action, but he denies he was personally served as is required under Rule 4(d). In fact, the record reveals that no proof of service was made and filed with the court clerk showing service was effected on Scott. *See* Ark. R. Civ. P. 4(g). Even so, the record does reflect that Scott filed a timely answer to OCSE's complaint, denying the agency's allegations that he is Keegan's father.

■ ■ Under Ark. R. Civ. P. 12(b), the defense of insufficiency of service of process shall be asserted in the responsive pleading or, at the option of the pleader, it may be made by motion. *Lawson v. Edmondson*, 302 Ark. 46, 786 S.W.2d 823 (1990). A motion making this defense [and others listed in Rule 12(b)] must be made before pleading if a further pleading is permitted. The defense of insufficiency of service of process is waived if it is neither made by motion under this rule nor included in the original responsive pleading. *Id*; *see also* Ark. R. Civ. P. 12(h)(1). In the instant case, Scott filed no timely motion raising the insufficiency-of-service-of-process defense, nor did he raise

that defense in the answer he filed. Consequently, under the terms of Rule 12, Scott waived that defense.

■ Before passing from this point, we note Scott's contention that his attorney could not waive any rights of Scott's because of his minority. Scott initially argues that, under Ark. R. Civ. P. 17(b), the chancellor was obligated to appoint Scott a guardian ad litem to protect Scott's interests in this case. Rule 17(b), however, actually provides that the court shall appoint a guardian ad litem for an infant or incompetent person *not otherwise represented in an action* or shall make such other order as it deems proper for the protection of the infant or incompetent. (Emphasis provided.) Here, Scott's parents retained counsel to represent Scott, and Scott has been zealously represented throughout these proceedings, assuring that his interests were protected.

Scott also cites the case of *Schrum v. Bolding*, 260 Ark. 114, 539 S.W.2d 415 (1976), for the proposition that a minor cannot waive service by entering his or her appearance. We first point out that *Schrum* involved an adoption case and has limited value since Arkansas's adoption law has changed, which would have affected the result reached in *Schrum*. *See Temple v. Tucker*, 277 Ark. 81, 639 S.W.2d 357 (1982). But more important, ARCP Rules 4 and 12, in issue here, were not considered or discussed by the court in *Schrum* or *Temple*. In short, our rules ensure that a minor is represented and that the minor's interests are protected.

■ ■ We now turn to Scott's argument that OCSE failed to meet its burden of showing he is Keegan's father. Because this proceeding is civil in nature, OCSE's burden of proof is a mere preponderance of the evidence. *Barnes v. Barnes*, 311 Ark. 287, 843 S.W. 835 (1992). In a paternity case where the accused denies being the father of the child, the chancellor shall hear the evidence and decide the case as other issues at law. Ark. Code Ann. § 9-10-105 (Repl. 1998). Upon motion of either party in a paternity action, the trial court shall order the putative father, mother, and child to submit to scientific testing to determine whether or not the putative father can be excluded as being the biological father and to establish the probability of paternity if the testing does not exclude the putative father. *See* Ark. Code Ann.

§ 9-10-108(a)(1) (Repl. 1998). If the results of the paternity tests establish a 95% or more probability of inclusion that the putative father is the biological father of the child, after corroborating testimony of the mother in regard to access during the probable period of conception, such shall constitute a prima facie case of establishment of paternity, and the burden of proof shall shift to the putative father to rebut such proof. Ark. Code Ann. § 9-10-108(a)(6)(A) (Repl. 1998).

■ Pursuant to § 9-10-108(a)(1), OCSE requested the chancellor to appoint Laboratory Corporation of America (LabCorp) to conduct a test to determine paternity in this case, and LabCorp did so, reporting that there was a probability of 99.91% that Scott was Keegan's father. At trial, OCSE presented the LabCorp report and Susan's testimony that she and Scott had sex during the probable time of conception. Thus, under § 9-10-108(a)(6)(A), the OCSE had ostensibly presented evidence needed for a prima facie case, and it became Scott's burden to rebut the OCSE's proof. He did so.

Scott called a medical expert, Dr. Jerome Steven Mayersak, who offered the five following reasons why LabCorp's testing results were unreliable:

1. The population database used by LabCorp for its comparison group to Scott failed to take into account that Scott has a substantial amount of Cherokee Indian in his blood.

2. There were several errors in the chain of custody of the test specimen which raised doubts about the test accuracy, and one error was the several day time gap between delivery of the specimen to LabCorp and the actual testing.

3. LabCorp should conduct periodic evaluations of its personnel, and the lab itself should be inspected.

4. The genetic markers used in the test (short tandem repeats) were too small for even the Caucasian database that was employed.

5. LabCorp did not participate in any random testing of its results by another independent lab, so that errors in evaluation could be checked, corrected, and would ensure reliability.

■ After hearing Dr. Mayersak testify, the chancellor doubted LabCorp's testing results and concluded OCSE had not shown a prima facie case. Nonetheless, he found the other evidence presented by OCSE was sufficient to prove Scott's paternity. On this point, the chancellor related that not only did Susan testify to having sex with Scott at the time of conception, but also Scott admitted to having sex with her during the probable time she became pregnant. While Scott submits that Susan had sex with two other teenagers before her relationship with Scott, Susan only agreed to having had sex with one other boy, who was of another race, and she testified that the relationship did not occur during the time of conception. Counsel for OCSE and Scott argued the evidence and the witnesses' credibility before the chancellor, but at the end, the chancellor was convinced that Scott is Keegan's father. While Dr. Mayersak voiced an opinion that, as a thirteen year old, Scott likely could not father a child because he was not producing mobile sperm, he conceded a thirteen-year-old male could produce a child.

■ ■ On appeal, we consider the evidence in the light most favorable to the appellee, and although we try chancery cases *de novo* on the record, we will not reverse a finding of fact by the chancellor unless he is clearly erroneous. *Roe v. State*, 304 Ark. 673, 804 S.W.2d 708 (1991). We are unable to say the chancellor was clearly erroneous in finding Scott to be Keegan's father. We do point out that, because the chancellor's paternity determination did not include the results of scientific paternity testing, his finding is subject to a modification request that could require such scientific testing pursuant to Ark. Code Ann. § 9-10-115 (Repl 1998).[1]

In Scott's final argument, he submits that, because he is the underage consenting victim of Susan's crime, Arkansas's public policy should prohibit the State from establishing Scott's paternity which resulted from that crime. He cites *Miller v. State*, 318 Ark.

---

[1] But note: "In no event shall the adjudication or voluntary acknowledgment of paternity be modified later than three years after such adjudication or voluntary acknowledgment." *Cf. Littles v. Flemings*, 333 Ark. 476, 970 S.W.2d 259 (1998); *Flemings v. Littles*, 325 Ark. 367, 926 S.W.2d 445 (1996).

673, 887 S.W.2d 280 (1994), for the rule that victims younger than fourteen are beneath the age of consent and cannot be willing accomplices to sexual intercourse. In other terms, Scott argues that one who comes into equity must come with clean hands, and no sane person should be permitted to profit or acquire property by his own wrong or criminal acts. *See Womack v. Newman Fixture Co.*, 27 Ark. App. 117, 766 S.W.2d 949 (1989); *Wright v. Wright*, 248 Ark. 105, 449 S.W.2d 952 (1970).

The cases relied on by Scott are factually inapposite to the situation here. Those cases in no way establish a public policy that an underage consenting male victim who impregnates the sexual-abuse perpetrator, here a fifteen-year-old female, should be relieved from any responsibility for the child born of that sexual relationship. While Arkansas does not appear to have any case law directly on point, other jurisdictions have soundly ruled contrary to Scott's contention.

As we have already mentioned, Arkansas law, § 9-14-201(d), required the OCSE to bring this paternity action to seek reimbursement of benefits from Scott as Keegan's father. Thus, there is no question that Scott has a legal liability to support his out-of-wedlock child, but the issue is whether Susan's wrongful conduct obviated Scott's duty to support Keegan.

The rule generally accepted in other jurisdictions is that a putative father who had been below the age of consent for sexual intercourse under criminal sexual conduct statutes at the time of conception is liable for supporting the child resulting from that union. *Jevning v. Cichos*, 499 N.W.2d 515 (Minn. App. 1993); *see also Dept. of Rev., Bennett v. Miller*, 688 So.2d 1024 (Fla. App. 5 Dist. 1997); *State Ex Rel. Hermesmann v. Seyer*, 847 P.2d 1273 (Kan. 1993); *Mercer County Dep't of Social Servs. V. Alf M.*, 589 N.Y.S.2d 288 (N.Y. Fam. Ct. 1992); *In Re Paternity of J.L.H.*, 441 N.W.2d 273 (Wis. App. 1989); *Schierenbeck v. Minor*, 367 P.2d 333 (Colo. 1961); 14 C.J.S. Children Out-of-Wedlock § 42 (Supp. 1998).

In *State Ex Rel. Hermesmann v. Seyer*, the Kansas Supreme Court upheld its state's Department of Social and Rehabilitative Services' petition which sought to require Shane Seyer, a

thirteen-year-old putative father, to reimburse the funds the state had paid to support his child. The facts show that Colleen Hermesmann was Shane's babysitter when Colleen was sixteen years old and Shane was twelve years old. The two engaged in a consensual sexual relationship, and, as a result, Colleen conceived and gave birth to Melanie, a female infant. At the time of the child's birth, Colleen was seventeen and Shane was thirteen years old. Colleen was charged with statutory rape, but pled guilty to the lesser offense of contributing to a child's misconduct. The Kansas court recognized that, under the statutory and common law of that state, Shane owed a duty to support his minor child. The court further added the following:

> This State's interest in requiring minor parents to support their children overrides the State's competing interest in protecting juveniles from improvident acts, even when such acts may include criminal activity on the part of the other parent. Considering the three persons directly involved, Shane, Colleen, and Melanie, the interests of Melanie are superior, as a matter of public policy, to those of either or both of her parents. This minor child, the only truly innocent party, is entitled to support from both her parents regardless of their ages. *Seyer*, 847 P.2d at 1279.

In *Dept. of Rev., Bennett v. Miller*, the Florida Court of Appeals announced its state's public policy in these matters as follows:

> A manifestation of public policy in favor of protecting children, the statute provides that the willingness or consent of a child is not a defense to the crime of sexual battery when the perpetrator is in a position of familial or custodial authority. The statute plainly pertains to the guilt of a person charged with sexual battery upon a child, while having nothing to do with the child support obligations of a biological parent. The statute does not create a defense for minor putative fathers in paternity actions. 688 So.2d at 1025.

Scott offers no legal authority contrary to the cases set out above, and we surmise that, if the General Assembly had wanted to exclude minor parents from responsibility for paternity and child support in circumstances like those now before us, it could have so provided.

In conclusion, we note that another case Scott cites, *Reid v. Reid*, 57 Ark. App. 289, 944 S.W.2d 559 (1997), also fails to make his point. In *Reid*, the court of appeals applied the clean-hands maxim, but in doing so, rejected the father's request to abate his child-support payments because he was in prison and unable to earn income. The appellate court affirmed the trial court's holding that a child-support obligation should not be modified where the means with which to pay support had been reduced or eliminated because of his criminal conduct. In so holding, the court considered the children's best interests, not the father's or mother's, when ordering that the father's child support should continue.

For the foregoing reasons, we affirm the chancellor on all three arguments presented by Scott in this appeal.

CORBIN, J., dissents.

DONALD L. CORBIN, Justice, dissenting. I dissent because I have grave doubts about the soundness of the decision to order Scott, a child himself, to financially support the infant, Keegan, born as a result of an illegal sexual encounter. I take issue with the majority's reference to Scott as "an underage consenting male victim," as our law provides that a person under the age of fourteen is incapable of consenting to a sexual act. "Our public policy, as fixed by the General Assembly, is manifest that victims younger than age 14 are beneath the age of consent and cannot be willing accomplices to sexual intercourse." *Miller v. State*, 318 Ark. 673, 677, 887 S.W.2d 280, 282 (1994). To require a person under fourteen to be responsible for a child born as the result of a sexual crime seems to thwart that public policy, which is clearly intended to protect young persons who are not capable of protecting themselves or making intelligent decisions about such matters.

Although I do not disagree with the majority's recitation of case law from other jurisdictions or with the principle that the welfare of the infant child is of paramount consideration, I differ with the majority on the issue of *who* should support the child. Ordering Scott to support this child effectively punishes him for being the victim of a crime. To this end, I believe that this situa-

tion could better be handled like those in which the putative father is not known or is deceased. Otherwise, the message such a decision sends is that a victim of crime must pay for the criminal act of the perpetrator. For these reasons, I respectfully dissent.