SHAWN A. WOMACK, Associate Justice
Gary Martin was convicted of first-degree murder for the killing of Kimberly Burris. He was sentenced to life imprisonment. This court affirmed Martin's conviction on direct appeal. Martin v. State , 346 Ark. 198, 57 S.W.3d 136 (2001). The present case is an appeal from the Lonoke County Circuit Court's denial of Martin's 2016 motion requesting DNA testing pursuant to Arkansas Code Annotated §§ 16-112-201 et seq. (Repl. 2016), which permits postconviction testing of evidence under certain circumstances. We affirm.
Burris disappeared in July 1998. Her body was found in a freezer located in an abandoned house in Lonoke County in November 1998. Martin was arrested on suspicion of committing the murder in March 1999 after police secured statements from Yolanda Day (1) identifying Martin as the murderer and (2) admitting that she and two others accompanied Martin from the time of Burris's abduction until her murder. Day described the location of the abandoned house, the location of Burris's body within the house, and details about Burris's attire at the time of her death. Day also suggested that Martin's motive for the murder could have been his belief that he had contracted AIDS from Burris.
In Martin's direct appeal, we held that Day's accomplice testimony had been sufficiently corroborated by circumstantial evidence to support the jury's verdict. Martin , 346 Ark. at 204-05, 57 S.W.3d at 141. The State presented evidence confirming that Martin and Burris had a sexual relationship for several months prior to the murder, that Burris had AIDS, and that Martin informed his parole officer of his distress over contracting AIDS. Id. at 203-04, 57 S.W.3d at 140. Another witness testified that she saw Martin force a screaming Burris into a vehicle just before Burris was declared missing. Id. Other witnesses testified as to Martin's strange behavior immediately after Burris went missing and in the following months, including openly speculating that she had been killed immediately after her disappearance, moving and altering his appearance, and removing a missing-person flier for Burris he had previously posted. Id. Burris's grandmother testified about Martin's similar suspicious communications with her during the same time frame. She said that Martin speculated about Burris's location and claimed that he had seen her alive. Id. Medical-examiner testimony corroborated Day's description of Burris's body being "hog-tied," her mouth gagged, and her body being placed in a freezer. Additionally, the examiner testified that the cause of death was either suffocation from the gag or prior trauma, consistent with Day's statement. Analysis by the Arkansas State Crime Lab claimed that hair found at the house was microscopically similar to Yolanda *765 Day's. Id. We concluded that this other evidence "clearly established Burris's murder and tended to connect Martin to its commission." Id. at 204, 57 S.W.3d at 141.
In the present action, Martin requests DNA testing pursuant to Arkansas Code Annotated §§ 16-112-201 et seq., of (1) the hair ascribed via microscopic analysis to Day and (2) other evidence including the victim's clothing and the materials used to bind the victim's body. He asserts that testing this evidence will support his contentions that Day's statements were unreliable and that another suspect was the true murderer. Our standard for reviewing the denial of postconviction relief is whether the circuit court's findings were clearly erroneous. See, e.g. , King v. State , 2013 Ark. 133, at 3, 2013 WL 1279079.
As we have made clear in prior interpretations of the postconviction DNA-testing statutes, the regime does not permit testing of evidence based on a mere assertion of innocence or the theoretical possibility that additional testing might alter the outcome of a trial; the statute was "not meant to do away with finality in judgments." Johnson v. State , 356 Ark. 534, 549, 157 S.W.3d 151, 163 (2004). The petitioner must identify how the requested testing "would establish the actual innocence of the person in relation to the offense being challenged." Ark. Code Ann. § 16-112-202(6)(B) (emphasis added).
From the outset, this requirement is enough to affirm the circuit court's rejection of Martin's request for DNA testing of the hair ascribed to Day. Martin seeks to demonstrate that Day was not at the crime scene to show that the jury relied on a fabricated account to reach a conviction. This argument fails for two related reasons. First, even if DNA testing proved that the hair-microscopy analysis was incorrect and that the hair did not come from Yolanda Day, this new revelation would not significantly advance Martin's claim of actual innocence. Showing that the hair in question came from a person who had been in the abandoned house at some time prior to the murder or during the several-month interlude between the crime and the discovery of the body would not undermine the other evidence that Day's testimony was credible. Second, and relatedly, this is substantially the same inquiry that this court discussed on direct appeal as outlined above. We held that the State presented sufficient evidence corroborating Day's testimony to implicate Martin in Burris's murder and to justify the jury's verdict. In our discussion of the multiple incriminating statements corroborating Day's testimony, the hair microscopy evidence in question warranted one sentence.
As for Martin's requests regarding other evidence, the circuit court's denials are justified based on the presumption against timeliness in Arkansas Code Annotated § 16-112-202(10)(B). That section states that a presumption against timeliness applies if the motion for additional testing is not made within thirty-six months of the date of conviction. The presumption can be rebutted by a showing:
(i) That the person making a motion under this section was or is incompetent and the incompetence substantially contributed to the delay in the motion for a test;
(ii) That the evidence to be tested is newly discovered evidence;
(iii) That the motion is not based solely upon the person's own assertion of innocence and a denial of the motion would result in a manifest injustice;
(iv) That a new method of technology that is substantially more probative than prior testing is available; or *766 (v) Of good cause.
Ark. Code Ann. § 16-112-202(10)(B). Of these options for rebuttal, Martin argues that subsections (iii)-(v) apply to his case. Martin contends that evidence from Burris's clothes, from the restraints used to bind her, and from hair found in a car linked to an earlier suspect in the murder will reveal that the earlier suspect was the actual murderer.
All of this evidence was available at the time of trial. The alternative suspect was known to both the State and to Martin at that time as well. As it relates to this evidence, then, we cannot say that Martin's argument is more than a bare assertion of innocence. His arguments both for clearing that hurdle and for demonstrating manifest injustice turn on the alleged weakness of the hair-microscopy evidence. He alleges that if that evidence is affirmatively discredited through testing, the remainder of the State's case falls apart. With the original theory debunked, he argues, the evidence pointing toward the alternative suspect takes on new significance. But this is, again, fundamentally the same argument as above. Martin argues that his behavior after Burris's disappearance would paint a favorable picture of his innocence if it were not put in a negative light by Day's statement and, in turn, that the statement would not have been believable to the jury but for the hair-microscopy evidence. We considered Martin's post-disappearance conduct on direct appeal and-far short of finding it favorable-held that it was corroborative of the State's case. As discussed above, we hold that DNA testing on the hair microscopy evidence would not advance Martin's case of actual innocence. In these circumstances, Martin's desire to test additional evidence based on a different theory of the crime can only be called a bare assertion of innocence. Martin relies on these same arguments to make his case for the "good cause" prong of the untimeliness showing; they fail for the same reason.
Martin's arguments under Arkansas Code Annotated § 16-112-202(10)(B)(iv) are equally unavailing. While it is uncontested that the evidence in question was not subjected to DNA testing, the fact that testing did not take place does not mean that the methods now being requested were not available. We have interpreted Ark. Code Ann. § 16-112-202(10)(B)(iv) as it is written. We look at the time of the trial and determine whether the petitioner made the necessary showing that the method requested was not available and, if it was not, whether this new method would be substantially more probative for the tests requested than the methods that were available. See, e.g. , King , 2013 Ark. 133, at 5-6. Martin has not made a satisfactory showing here. We have noted the availability of the methods requested by Martin at dates earlier than the trial in this case. See, e.g. , Mitchael v. State , 2012 Ark. 256 at 4, 2012 WL 1950256 (citing Howard v. State , 2012 Ark. 177, 403 S.W.3d 38, to demonstrate that mitochondrial-DNA testing had been performed prior to 1999; Hamm v. Office of Child Support Enforcement , 336 Ark. 391, 985 S.W.2d 742 (1999), to demonstrate that "Short Tandem Repeat" testing had been used in that case). Because the requested methods were available at the time of Martin's trial, he did not demonstrate a "new method of technology" as is required to rebut the presumption of his petition's untimeliness.
Finally, Martin argues on appeal that, whatever the merits of his petition for DNA testing, the circuit court erred by denying it without holding an evidentiary hearing. Arkansas Code Annotated § 16-112-205(a) requires a hearing for DNA-testing petitions "[u]nless the petition and *767 the files and records of the proceeding conclusively show that the petitioner is entitled to no relief." Because we have concluded that Martin's requests for testing of both the hair-microscopy evidence and the other items lack merit, we cannot say that the circuit court clearly erred in deciding the matter without a hearing.
Affirmed.
Kemp, C.J., and Hart, J., dissent.
Wynne, J., dissents in part.