Vincent James HUSSEY *v.* STATE of Arkansas

CR 97-450                                         966 S.W.2d 261

Supreme Court of Arkansas
Opinion delivered April 16, 1998

*William M. Howard, Jr.*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Gil Dudley*, Asst. Att'y Gen. and *James Gowen*, Law Student Admitted to Practice Pursuant to Rule XV(E)(1)(b) of the Rules Governing Admission to the Bar of the Arkansas Supreme Court, under the supervision of *Kelly K. Hill*, Deputy Att'y Gen., for appellee.

TOM GLAZE, Justice. This appeal is a companion case to *Harris v. State*, 331 Ark. 353, 961 S.W.2d 737 (1998), where we upheld the capital-murder conviction of Derrick Harris for the shooting death of Jimmy Gathings, a Monticello used-car dealer. Harris's sole point on appeal was that the State had presented testimony that was so conflicting that it was insufficient to sustain a jury verdict of guilty. We disagreed, and held that the trial court had correctly denied Harris's directed-verdict motion based on the eyewitness testimony of Albert Lambert and Jerry Majors. Both men testified that they heard "pows" or "banging" sounds, observed Harris and another man leaving Gathings's office, and subsequently found Gathings had been shot. In *Harris*, we upheld the jury verdict of guilty and concluded that any incon sistencies in the witnesses' testimony went to their credibility.

For his first point of error, appellant Vincent Hussey challenges the trial court's denial of his motion for a directed verdict. Hussey contends the State failed to prove a robbery had been committed or that he had committed a homicidal act, thus failing to prove the charge of capital murder. However, in reviewing the record, it is clear there is sufficient evidence to support Hussey's conviction for capital murder.

As in *Harris*, Lambert and Majors testified that they heard what sounded like shots coming from Gathings's office and saw two men running from the office with pistols in their hands. Lambert and another man got in a truck and followed the two men to a nearby location where the men were picked up by others sitting in a red car. In *Harris*, Lambert identified Harris as the first man leaving Gathings's office. In the present case, Lambert identified Hussey as the second man. Myron Briggs testified that, on the day of Gathings's murder, he dropped Harris and Hussey off at a pool hall before the murder, and picked them up afterwards as they ran to Briggs's car. Briggs said he took them to where Hussey resided.

Majors testified the same as he had in *Harris*, plus he described the second man out of Gathings's building as wearing a brown or tan flannel shirt with a red shirt underneath and a blue or black toboggan on his head — the same clothing Hussey wore the day of Gathings's murder. Scott Sherrill, a serologist, testified the red shirt Hussey wore on that day had blood stains matching Gathings's blood type.

Hussey gave officers conflicting statements that implicated him in Gathings's murder. Hussey first asserted he was not involved in the murder, but after signing a rights form, he conceded he went to Gathings's office, but said "another guy pulled the trigger." In another statement, Hussey related that Harris and a man named Stanford offered Hussey and two friends $500.00 to serve as lookouts while Harris robbed Gathings's store. At trial, Hussey claimed he stood somewhere outside Gathings's building, but in an earlier statement, he said that he was stationed inside,

where he saw Gathings reach for Harris's gun and Harris reacted by shooting Gathings.

In sum, Hussey's own pretrial statements, and even his trial testimony, were at odds with his attempts to explain his participation, if any, in the shooting death of Gathings. This court has often stated that false and improbable statements explaining suspicious circumstances are admissible as proof of guilt. *Thomas v. State*, 312 Ark. 158, 847 S.W.2d 695 (1993). Our court has further held that one eyewitness's testimony is sufficient to sustain a conviction. *Harris*, 331 Ark. 353, 961 S.W.2d 737. In reviewing the foregoing evidence most favorable to the State, we hold that there is more than substantial evidence to support the jury verdict finding Hussey guilty. *See Id.*

Hussey's second and final point for reversal is that the trial court erred in ruling he had voluntarily waived his rights and confessed. Again, Hussey's argument is without merit. In support of this point, Hussey claims that he was never given a chance to read his statements, that he was beaten by an officer before giving his statement, and that he was driven to a secluded area by an officer and at gunpoint forced to sign one of his statements. Hussey also testified that he was wearing ankle shackles and handcuffs when an officer beat and rammed Hussey's head into a window. He claimed an administrator, Barbara Pirtle, and an inmate, Scott Cruce, witnessed these events. However, not only did the officers deny such actions had taken place, but both Pirtle and Cruce testified they did not see anything that would indicate Hussey was being hurt.

When reviewing the voluntariness of confessions, we make an independent determination based on the totality of the circumstances and reverse the trial court only if its decision was clearly erroneous. *Kennedy v. State*, 325 Ark. 3, 923 S.W.2d 274 (1996). Based upon the foregoing evidence, we are unable to say the trial court was clearly erroneous in finding Hussey's statements were a product of his own free will.

In accordance with Ark. Sup. Ct. Rule 4-3(h), the record has been reviewed for adverse rulings objected to by appellant but not argued on appeal, and no such errors were found. For the aforementioned reasons, Hussey's judgment of conviction is affirmed.