Cite as 2026 Ark. 26

# SUPREME COURT OF ARKANSAS

No. CR–25–169

| | |
|---|---|
| VINCENT HUSSEY | **Opinion Delivered:** February 12, 2026 |
| APPELLANT | PRO SE APPEAL FROM THE DREW COUNTY CIRCUIT COURT [NO. 22CR-96-34] |
| V. | |
| STATE OF ARKANSAS | HONORABLE CREWS PURYEAR, JUDGE |
| APPELLEE | |
| | AFFIRMED. |

**SHAWN A. WOMACK, Associate Justice**

Appellant Vincent Hussey appeals from the denial of his pro se petition for writ of habeas corpus, seeking new DNA testing of various items of evidence, contending the method of testing sought was not previously available.[1] The trial court denied and dismissed the petition, finding that this was a second or successive petition for similar relief and that the issues raised had been previously decided by this court in *Hussey v. State*, 2021 Ark. 45. We affirm.

## I. *Background*

In 1996, a Drew County jury convicted Hussey and his codefendant, Derrick Harris, of capital murder for the shooting death of Jimmy Gathings during the course of a robbery, and both defendants were sentenced to life imprisonment. This court affirmed Hussey's

---

[1]The petition was filed pursuant to Act 1780 of 2001 as amended by Act 2250 of 2005, codified at Arkansas Code Annotated sections 16-112-201 to -208 (Repl. 2016),

conviction and sentence.[2]  During the trial, two witnesses testified that they heard gunshots and saw two men running from Gathings's office with pistols in their hands, and both witnesses identified Hussey as one of the two men they saw running from the scene.[3] Additionally, a serologist testified that the red shirt Hussey was wearing on that day had blood stains matching Gathings's blood type.[4]  At trial, Hussey testified that he stood outside Gathings's building during the shooting.  However, in a prior statement, Hussey said that he had been stationed inside the building as a lookout, he saw Gathings reach for Harris's gun, and Harris shot Gathings.[5]  On direct appeal, this court held that there was more than substantial evidence to support the jury's verdict finding Hussey guilty and that Hussey's claim that his statements were coerced was without merit.[6]

In 2012, Hussey filed a prior petition for writ of habeas corpus under Act 1780 claiming actual innocence and requesting DNA testing of the blood on the red shirt.[7]  The

---

[2]*Hussey v. State*, 332 Ark. 552, 966 S.W.2d 261 (1998).

[3]*Id.*

[4]*Id.*

[5]Hussey gave officers conflicting statements: he first denied involvement in the murder and then subsequently admitted he was in Gathings's office but claimed that someone else shot Gathings.

[6]*Hussey*, 332 Ark. 552, 555, 966 S.W.2d 261, 263.

[7]Hussey asserted he was actually innocent and that DNA testing of the blood on the red shirt would prove the blood was Harris's blood from a cut on Harris's hand and that the identification of Hussey as the second man running from the building was wrong.

petition was denied, and we affirmed on appeal, finding that Hussey had failed to rebut the presumption against timeliness of the petition.[8]

In 2020, Hussey filed in the trial court a pro se "Amended Motion to File Second or Successive Petition for 'Good Cause' Pursuant to A.C.A. 16-112-205(d)" with an attached petition for scientific testing pursuant to sections 16-112-201 to -208 in which Hussey requested DNA testing of the gun handle, the license plate, and a watch. The trial court denied the petition as successive and concluded that the second petition was precluded by law of the case following this court's opinion denying habeas relief on the basis of Hussey's failure to rebut the presumption against timeliness.[9] On appeal, Hussey argued that he had rebutted the presumption against timeliness because the crime lab did not take a blood sample from him at the time of his criminal trial and that new methods of testing "touch" DNA, such as STR and Y-STR testing, were available that were not available when he was arrested and convicted.[10] Acknowledging that in 2007 Y-STR testing became an available new technology, this court held that Hussey failed to establish that additional testing would significantly advance his claim of innocence.[11] Touch DNA testing of both the pistol used by Hussey's codefendant and other evidence found at the crime scene would not establish a reasonable probability that Hussey was wholly innocent and did not act as an accomplice, particularly in light of the fact that Hussey's conviction was based on eyewitness testimony

---

[8]*Hussey v. State*, 2014 Ark. 322, 439 S.W.3d 44.

[9]*Id.*

[10]*Hussey v. State*, 2021 Ark. 45.

[11]*Id.*

as well as his own admissions that he was present at the time of the robbery and murder and acted as an accomplice.[12]

## II. *Standard of Review*

We do not reverse a trial court's decision to deny a petition for writ of habeas corpus filed under Act 1780 unless it is clearly erroneous.[13] A finding is clearly erroneous when, although there is evidence to support it, the appellate court, after reviewing the entire evidence, is left with the definite and firm conviction that a mistake has been made.[14]

Act 1780 of 2001, as amended by Act 2250 of 2005, provides that a writ of habeas corpus may be issued on the discovery of new scientific evidence proving a person actually innocent of the offense for which he or she was convicted.[15] A trial court can order testing under the Act when the proposed testing of the specific evidence may produce new material evidence that would support the theory of defense and raise a reasonable probability that the petitioner did not commit the offense.[16] Under section 16-112-202(10)(B), there is a rebuttable presumption that a petition filed more than thirty-six months after the entry of judgment is untimely. To rebut this presumption, a petitioner must establish one of the following: (1) the petitioner was or is incompetent, and the incompetence substantially contributed to the delay; (2) there is newly discovered evidence; (3) the motion is more

---

[12]*Id.*

[13]*Rayfield v. State*, 2020 Ark. 40, 592 S.W.3d 237.

[14]*Id.*

[15]Ark. Code Ann. § 16-112-201; *Marshall v. State*, 2017 Ark. 208, 521 S.W.3d 456.

[16]Ark. Code Ann. § 16-112-202(8)(B); *Pankau v. State*, 2013 Ark. 162.

than an assertion of innocence, and a denial of the motion would cause a manifest injustice; (4) new technology exists that is substantially more probative than the prior testing; or (5) other good cause.[17]

### III. *Claims for Relief*

Hussey contends on appeal that the trial court abused its discretion when it denied his request for DNA testing as a second or successive petition. Specifically, Hussey claims that in his prior petitions he requested STR and Y-STR testing, which is "altogether different" from his present petition in which he seeks M-VAC testing, a method that was not previously available.[18] Hussey argues that because the testing he requests is different, his claim cannot be a second or successive claim for similar relief. Moreover, Hussey further argues that he has rebutted the presumption against timeliness by showing that a new method of technology that is substantially more probative than prior testing is available.

Postconviction scientific testing is authorized only under specified conditions.[19] The petitioner bears the burden of establishing that each condition is satisfied.[20] Failure to meet any one condition precludes scientific testing as a matter of law.[21] The conditions to be satisfied for relief under the Act for DNA testing require, among other things, that DNA

---

[17] *Hooper v. State*, 2021 Ark. 110, 622 S.W.3d 641.

[18] Hussey seeks to have testing conducted on a license plate, a ten-dollar bill, fabrics, a watch, tan pants, khaki pants, a jacket, two red jersey shirts, and the handle of a .38/.357 handgun.

[19] *See* Ark. Code Ann. §§ 16-112-201 to -203.

[20] *See McClinton v. State*, 2017 Ark. 360, 533 S.W.3d 578.

[21] *Johnson v. State*, 2019 Ark. 391, 591 S.W.3d 265.

5

testing be available and that the petitioner identify a theory of defense that would establish his or her actual innocence.[22] The petitioner must also show that the proposed testing may produce new material evidence that would support the petitioner's theory and raise a reasonable probability that he or she did not commit the offense.[23] That is, Act 1780 does not permit testing of evidence on the basis of a mere assertion of innocence or a theoretical possibility that additional testing might alter the outcome of a trial.[24] Testing is authorized only if it can provide materially relevant evidence that will significantly advance the petitioner's claim of innocence in light of all evidence presented to the jury.[25]

This court has previously noted that some of the items that Hussey would seek to test have already been held to have extremely low probative value—additional testing of evidence would not significantly advance his claims of actual innocence in light of (1) his own admissions that he was present during the commission of the crimes and acted as an accomplice and (2) eyewitness testimony.[26] Merely asserting that there is a new method of technology for testing evidence is insufficient to rebut the presumption against timeliness

---

[22] *See* Ark. Code Ann. § 16-112-202(6)(B).

[23] *See* Ark. Code Ann. § 16-112-202(8).

[24] *Rayfield*, 2020 Ark. 40, 592 S.W.3d 237; *see also Martin v. State*, 2018 Ark. 176, 545 S.W.3d 763.

[25] *See McClinton*, 2017 Ark. 360, 533 S.W.3d 578.

[26] *See Hussey*, 2021 Ark. 45; *see also Hooper v. State*, 2021 Ark. 110, 622 S.W.3d 641 (When a petitioner admitted to rape and identity was not at issue, there was no reason to test for DNA when DNA testing would not show actual innocence.).

6

when it is one of many factors to consider, nor is it sufficient under these circumstances to differentiate the basis of his claims raised in the previous Act 1780 petitions.[27]

Citing *Reed v. Goertz*, 598 U.S. 230 (2023), Hussey argues on appeal, as he did below, that denying him access to DNA testing that may prove his actual innocence is a violation of procedural due process.[28] The circuit court did not rule on the argument below and it is unpreserved for our review.[29]

Last, Hussey contends that he was entitled to a hearing on his petition. Section 16-112-205(a) provides that the trial court is not required to hold an evidentiary hearing if the petition, files, and records conclusively show that the petitioner is entitled to no relief. Because Hussey's petition was untimely under section 16-112-202(10)(B), and he was

---

[27] *See Makkali v. State*, 2022 Ark. 24, 638 S.W.3d 280.

[28] Although Hussey acknowledges that the action should be filed pursuant to 42 U.S.C. section 1983, he contends that his procedural due-process rights were violated when the trial court denied his request for M-VAC testing. A procedural due-process claim consists of two elements: (i) deprivation by state action of a protected interest in life, liberty, or property, and (ii) inadequate state process. *Id.* Hussey merely contends the denial of his request for testing qualifies as a blanket violation of procedural due process without demonstrating an unconstitutional state action or inadequate state process. "The availability of technologies not available at trial cannot mean that every criminal conviction, or even every criminal conviction involving biological evidence, is suddenly in doubt. The dilemma is how to harness DNA's power to prove innocence without unnecessarily overthrowing the established system of criminal justice." *Dist. Att'y's Off. for the Third Jud. Dist. v. Osborne*, 557 U.S. 52, 62 (2009).

[29] *Pitts v. State*, 2011 Ark. 322 (per curiam) (Argument that sections 16–112–201 to –208 create a constitutionally protected liberty interest on the part of convicted defendants to have evidence introduced against them retested using technology not available at the time of trial was not preserved for appellate review.).

clearly entitled to no relief under the Act, the trial court was not obligated to hold a hearing.[30]

Affirmed.

Special Justice CHARLES MATTHEW DUELL joins.

BRONNI, J., not participating.

*Vincent Hussey*, pro se appellant.

*Tim Griffin*, Att'y Gen., by: *Michael Zangari*, Ass't Att'y Gen., for appellee.

---

[30] *See Rayfield*, 2020 Ark. 40, 592 S.W.3d 237.